SAMUEL PACKWOOD *v.* ELIZA H. DORSEY, and others, Heirs of Alice Packwood, deceased.

A donation *inter vivos* of real estate, made while the Code of 1808, was in force, is null and void, unless executed before a Notary Public, and two witnesses, and accepted in express terms by the donee during the life of the donor. Book III. tit. II. arts. 53, 54.

A donation *inter vivos* of real property, null for want of formalities prescribed by law, cannot be ratified by any confirmative act on the part of the donor ; nor will the voluntary execution of the donation by the donor, prevent him from pleading its nullity. Code of 1808, Book III. tit. III. art. 239. But the confirmation, ratification, or voluntary execution of such a donation by the heirs or assigns of a donor, after his death, will render it binding on them. Ib. art. 240.

Contracts are solemn, or ordinary. As the latter depend for their validity on the ascertained will of the parties, the formalities prescribed in relation to them are only

*probationis causa*, and may be supplied by confirmation or ratification ; while as to the former, the formalities required being *solemnitatis causa*, and essential to their validity and legal existence, cannot be supplied by any ratification, express or implied. Of this class are donations *inter vivos*.

APPEAL from the District Court of the First District, *Buchanan*, J.

MORPHY, J. This controversy has arisen in relation to the partition of the community of *acquêts*, which existed between Samuel Packwood and his late wife, Alice Packwood. One of the heirs of the deceased, Emily Packwood, died leaving two daughters, now married to James A. Gasquet and Julian Neville. They claim, as their property, a lot situated in Magazine Street, which has been inventoried as owned by the community, but which they aver belongs to the succession of their deceased mother, in virtue of a donation of it made to her by Samuel Packwood, their grand-father, and they pray that it be not included in the partition. The evidence which is adduced of this donation, is to be found in a letter of Samuel Packwood, to Greenberry Dorsey, then the husband of his daughter Emily, dated New London, the 1st of September, 1817 ; and it is shown, that from that time, she has always been in the possession and enjoyment of the property, thus given to her. As to the donation itself, it is clearly null and void, not having been passed before a Notary Public and two witnesses, as required by the Code of 1808, in force at the time it was made. Page 220, articles 53, 54. But the question is as to the effect of the donee's possession, and the voluntary execution of the donation on the part of Samuel Packwood. It is contended, and the inferior Judge has so decided, that the donor who has voluntarily executed a donation null for want of the formality required by law, cannot plead its nullity.

The opinion of the court below is based exclusively on the authority of Toullier, who, in commenting on articles of the Napoleon Code, identical with those of our late Civil Code, comes to the conclusion, that although the donor cannot, by any confirmative act, supply the defects of a donation, *inter vivos*, null in form, yet he can ratify it, and preclude himself from pleading its nullity, by voluntarily executing it. Toullier, Vol. 5, No. 173 and 189 ; 8 Vol. No. 526. Whatever may be our respect for

that eminent jurist, we cannot adopt his opinion. He seems to have lost sight of the well known distinction between *solemn* and *ordinary* contracts. As the latter depend, for their validity, on the ascertained will of the parties, the formalities prescribed in relation to them are only, *probationis causa*, and can be supplied by confirmation or ratification ; while in the former, the formalities required are, *solemnitatis causa*, and cannot be supplied by ratification, express or implied. They are essential to the validity and legal existence of those contracts, which by reason of their importance, or for any other cause, have been made to depend on a strict observance of such formalities. Of this class of contracts, are donations *inter vivos ;* being irrevocable, and tending to impoverish the family of the donor, they are not viewed by the law with a favorable eye, and have been subjected to certain forms and solemnities, which cannot be dispensed with under pain of nullity. They must be executed before a Notary Public and two witnesses, and must be accepted, in express terms, by the donee, during the lifetime of the donor. Code of 1808, arts. 53 and 54, p. 220. After thus prescribing the form in which donations, *inter vivos*, must be executed, the Code provides, Art. 239, p. 310, that " the donor cannot, by any confirmative act, supply the defects of a donation, *inter vivos*, null in form, it must be executed anew in legal form." This provision is to be found under the head of recognitive and confirmative acts, wherein the general rule is laid down, in relation to ordinary contracts or obligations, that the confirmation, ratification, or voluntary execution of them, involves a renunciation of the means and exceptions that might have been opposed. It is apparent that the law-giver intended to except donations, *inter, vivos*, from the operation of this general rule, but only so far as the donor himself is concerned ; for we find in the next article, that, after his death, his heirs and assigns can confirm or ratify the donation, expressly, or by a voluntary execution of it. Art. 240. The reason of this difference between the donor and his heirs, is obvious. If he could, by ratification, express or implied, render valid a donation null in point of form, he would be enabled to make a donation without observing any of the formalities required by law ; while the heirs, by their ratification, make no donation.

That of their ancestor being absolutely null, they had a right to plead such nullity ; by their ratification they renounce that right. *Unicuique licet juri in favorem suum introducto renuntiare.* The doctrine of Toullier would lead to the preposterous conclusion that, while under the law no express confirmation or ratification can render valid a donation under private signature, it can be made so by the tacit ratification resulting from the voluntary execution of it by the donor. It would, moreover, render completely inoperative the positive provision of our law, that a donation, null for want of any of the requisite formalities, must be made anew in legal form. This provision alone, surely excludes the idea that a void donation can be rendered valid by any ratification, either express or tacit, on the part of the donor. After thus expressing our opinion on the point made in this case, we will simply refer to a host of learned commentators on the Napoleon Code, and some decisions of the French Courts, by which the opinion of Toullier has been condemned : see Deloincourt, 1 Vol. p. 238, notes 2 and 3. Grenier, Traité des Donations, 1 Vol. p. 206, No. 57 *ter*. Duranton, 8 Vol. p. 411, No. 389. Solon, Traité des Nullités, 2 Vol. Nos. 355 and 356. Merlin's Repert. 17 Vol. 603 and 604. Boileau, Rogron and Paillet's Commentaries on art. 1339 of the Napoleon Code. 23 Sirey 1 P. p. 41. Dalloz, 1825, Part 2, p. 76 and 1832, p. 39. Biret, Traité des Nullités 1 Vol. p. 357. But the question is not, *res nova,* even in this court. In 4 Mart. N. S. 464, and in 3 Robinson, 194, we held, that a donation of slaves, void for want of an estimate of them signed by the donor and donee, as required by article 48, p. 218 of the old Code, was not rendered valid by the tradition or delivery of the slaves. These cases were much stronger than the present ; in them, the donation was passed before a Notary Public, and two witnesses, and was duly accepted ; it was wanting only in the formality of the appraisement required by l aw.

It is, therefore, ordered that the judgment of the District Court be reversed ; and it is ordered and decreed, that the lot in Magazine Street, between Poydras and Lafayette Streets, as described in the inventory of the estate of the late Alice Packwood, be, and it is hereby declared, to belong to the community of gains and *acquêts,* heretofore existing between her and the plaintiff, S. Pack

wood ; and it is further ordered that this case be remanded for further proceedings in the partition prayed for, the appellees to pay the costs of both courts, so far as they relate to this controversy.

*Lockett, Micou,* and *A. Hennen,* for the appellant.

*Roselius,* for the defendants.