405 So.2d 812 (1981)
SUCCESSION of Mildred Margaret MILLER.
No. 66853.
Supreme Court of Louisiana.
March 2, 1981.
Dissenting Opinion April 14, 1981.
On Rehearing September 28, 1981.
Rehearing Denied November 16, 1981.
William J. Wegmann, William J. Wegmann, Jr., New Orleans, for defendant-applicant.
Derbes & Derbes, Jorda S. Derbes, Peter Derbes, New Orleans, for respondents.
LEMMON, Justice.
This is a contest between the administratrix of decedent's succession and decedent's cousin, Mrs. Albertha Meyer, who claims the ownership of certain bearer bonds and cash listed in the succession inventory. Mrs. Meyer contends she is the owner of the property by virtue of an inter vivos manual donation.[1] The issue is whether decedent made a valid manual donation.
*813 After a hearing on Mrs. Meyer's motion to traverse the inventory, the trial court held the bonds and cash were properly included in the succession inventory, and the court of appeal affirmed. 378 So.2d 543. We granted Mrs. Meyer's application to review these rulings. 381 So.2d 1231 (La. 1980).
Decedent acquired the bearer bonds about two years before she died, but the bonds were in Mrs. Meyer's possession at the time of decedent's death. About four months before her death decedent opened a joint savings account in the name of "Mildred M. Miller or Mrs. Albertha S. Meyer" and deposited into the account the sum of $7,599.72, which was the exact amount she had just received upon closing a personal savings account in her name only. The new joint account was designated as "payable to either or survivor". Mrs. Meyer withdrew the funds from the joint account the day before decedent died.

I.
As to the cash withdrawn from the savings account, Mrs. Meyer testified that decedent, when opening the joint account, said "Albertha, I want you to have that", but she told decedent the money was hers (decedent's) as long as she lived. Decedent admittedly received the interest paid on the money in the account.
Mrs. Meyer further testified that decedent, upon entering the hospital seven days before her death, realized the impending death and told her to take the money out of the homestead. Mrs. Meyer withdrew the money the day before decedent died.
A notarial act is required for the valid donation inter vivos of an incorporeal movable. C.C. art. 1536. However, the manual gift of a corporeal movable, accompanied by real delivery, is not subject to any formality. It is therefore evident that the savings account (an incorporeal movable) was not subject to manual gift, but the cash withdrawn from the account (a corporeal movable) could be subject to manual gift.
Mrs. Meyer relies on the decision in Succ. of Gorman, 209 La. 1092, 26 So.2d 150 (La. 1946), which held that in order to complete a manual gift it suffices that the will of the donor to give a corporeal movable operate simultaneously with the possession of the movable by the donee. The court noted that the ceremony of the donor's handing the property to the donee was an unnecessary formality.
The critical inquiry in the present case is whether the record establishes that decedent maintained an intention to donate the funds to Mrs. Meyer at a time when Mrs. Meyer possessed the funds in a form susceptible of manual gift.
Decedent expressed her unqualified intent that Mrs. Meyer have access to the funds by transferring them from an individual account to a joint account. According to Mrs. Meyer's testimony, decedent thereafter stated her desire for Mrs. Meyer to have the funds. Finally, by will executed three months before her death decedent expressly stated her desire for Mrs. Meyer to have everything she owned, stating her love for her cousin and her undying gratitude for the care and comfort received from her.
Seven days before her death decedent had a cerebral vascular attack and was taken to the hospital unconscious by Mrs. Meyer, who signed an acknowledgment of financial responsibility. She was semi-comatose and unable to speak or to be understood most of the time thereafter until her death, and thus she could not reiterate her intention to give Mrs. Meyer the funds at any time after the funds were reduced to cash.[2] However, under all the indicia of donative intent recited above, it is more probable than not that the unlimited donative intent previously displayed by decedent continued after the account was converted to cash and until her death.
Accordingly, we hold that although decedent did not hand over the funds in cash to *814 Mrs. Meyer and did not affirmatively demonstrate donative intent after the funds were converted to cash, Mrs. Meyer's possession of the cash, in accordance with decedent's express wishes, operated simultaneously with decedent's continuing will to accomplish a donation inter vivos.

II.
As to the bearer bonds, Mrs. Meyer testified that decedent gave her the bonds as a gift immediately after the acquisition and turned over possession to her. She admitted, however, that whenever interest was paid, she gave the coupons to decedent. She also admitted decedent had a room in her (Mrs. Meyer's) house, where decedent kept "a lot of stuff".
Bearer bonds are subject to a manual gift. Succ. of McCrocklin, 242 La. 404, 137 So.2d 274 (La.1961); Succ. of Moore, 40 La.Ann. 531, 4 So. 460 (La.1888). Such bonds are negotiated by delivery to the donee. While the obligation represented by the bond is an incorporeal movable, the document itself is a corporeal movable and is subject to a manual donation. L. Oppenheim, The Donation Inter Vivos, 43 Tul.L. Rev., 731 (1969).

III.
Significantly, the trial judge, in reasons for judgment, apparently accepted Mrs. Meyer's testimony, which although self-serving was consistent with decedent's documented actions and with the intent expressed in decedent's formally invalid will. The trial judge rejected Mrs. Meyer's claim solely because the facts related by her did not in his opinion satisfy the legal requirements for a valid donation.
Accepting the factual testimony of Mrs. Meyer and the corroborating circumstances of this case, we hold that the inter vivos donations of the bearer bonds and the cash were valid.
Accordingly, the judgments of the courts below are reversed, and it is now ordered that judgment be rendered in favor of Mrs. Albertha S. Meyer, maintaining her opposition to the inclusion in the Succession of Mildred Margaret Miller of $7,599.72 in cash and six Schwegmann Bros. Giant Supermarket bonds totaling $4,500.00. Costs in all courts are assessed against the succession.
DIXON, C. J., concurs with reasons.
CALOGERO and WATSON, JJ., dissent.
DENNIS, J., dissents with reasons.
DIXON, Chief Justice (concurring).
I respectfully concur, fully subscribing to the opinion as to the cash from a joint savings account, and agreeing with the result as to the bearer bonds. The bonds probably are incorporeal movables, but, because of the unconditional obligation to pay to bearer, differ slightly from a check, which need not necessarily be honored by a bank after the death of the maker.
United States government bonds (as in Succession of McCrocklin) payable to bearer are more like money than bonds of private businesses or of other governmental subdivisions. They are intrinsically valuable, not merely because the paper on which they are printed is a thing of some value, but because they are practically the same as legal tender. When we call bearer bonds of institutions other than the United States government "corporeal movables," it is a rather arbitrary, but probably workable, classification but only for determining whether they are subject to a manual gift.
DENNIS, Justice, dissenting.
A donation inter vivos is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it. La.C.C. art. 1468. Being a solemn contract, the donation inter vivos is subject to strict requirements of form. La.C.C. art. 1467. Article 1536 provides that "[a]n act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity." Perhaps because giving something of value without receiving equivalent value is *815 thought unusual, the authentic act serves both an evidentiary and cautionary function. Indeed, this court stated well over a century ago in reference to donations inter vivos, "being irrevocable, and tending to impoverish the family of the donor, they are not viewed by the law with a favorable eye." Packwood v. Dorsey, 6 Rob. 329, 331 (La.1844). Other important legal consequences are also attached to the distinction between onerous and gratuitous contracts. See 1 S. Litvinoff, Obligations § 100 in 6 Louisiana Civil Law Treatise 169-70 (1969).
Civil Code article 1539 provides an exception to the requirement of an authentic act whereby the giving of corporeal movable effects, accompanied by real delivery, is not subject to any formality. Other statutory exceptions exist outside the Civil Code, but none are relied upon here. E. g., Uniform Stock Transfer Act, La.R.S. 12:601 et seq. (1968); Uniform Gifts to Minors Act, La. R.S. 9:735 et seq. (1970). Since no authentic act was executed, the validity of the donation of the bonds in this case hinges principally on whether the bonds are corporeal movables and thus can be the object of a manual gift.
The Civil Code defines corporeals as things that have a body and can be felt or touched.[1] La.C.C. art. 461. Conversely, incorporeals have no body, but are comprehended by the understanding. La.C.C. art. 461. Corporeal movables are things which can be moved from place to place. La.C.C. art. 471. Incorporeal movables are rights, obligations and actions that apply to a movable thing such as bonds, annuities, and interests or shares in entities possessing juridical personality. La.C.C. art. 473 (emphasis added). It would appear that since the Civil Code expressly provides that bonds are incorporeal movables, they could not be the subject of a manual gift.
The majority holds that bearer bonds are subject to a manual gift citing Succession of McCrocklin, 242 La. 404, 137 So.2d 274 (1962) and Succession of Moore, 40 La.Ann. 531, 4 So. 460 (1888). However, these cases involved a particular type of bearer bond and sound theoretical analysis would not apply the holdings to all other bearer bonds.
In Succession of McCrocklin, this court held that the title to six United States Treasury bearer bonds was controlled by the Louisiana Negotiable Instruments Law. The court stated that the bonds being negotiable instruments could be negotiated by mere delivery and by gift as well as for value. 137 So.2d at 277. United States Treasury bearer bonds were found to be proper objects of a manual gift in Succession of Moore because they were considered corporeal movables. 4 So. at 465.
It is undoubtedly true as the majority states that the physical document evidencing the credit-right is a corporeal movable. The document itself, however, has little or no intrinsic value apart from the incorporeal right that the donor seeks to bestow and the donee desires to receive. The contract must not be confounded with the instrument in writing by which it is witnessed. La.C.C. art. 1762. Thus, Succession of Moore's disposition of the matter on a definitional basis cannot be accepted.
Neither is the rationale employed in Succession of McCrocklin of continuing validity. Title to United States Treasury bonds is controlled by federal law and prevails in matters where state law conflicts. Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962). If government bonds are validly transferred according to federal law, the absence of an authentic act or a manual gift does not defeat the transfer. Succession of Weis, 162 So.2d 791 (La.App. 4th Cir. 1964).
The private corporation bonds in this case are not government bonds; their transfer is not governed by federal law. These bonds, as Chief Justice Dixon implies in his concurring opinion, do not as closely approximate legal tender as government bonds.
*816 If donations inter vivos of some kinds of incorporeal things should no longer be viewed with an "unfavorable eye," this court needs to articulate why they are excepted from the rule requiring that all other donations of incorporeal things be done by authentic act.[2] The majority offers no supporting rationale for what may indeed be an equitable result in the present case. The law of this state has not made it easy to donate inter vivos or mortis causa. It was just such a failure of form that apparently has resulted in the decedent's will being found invalid. Predictability and stability in this area of the law is unlikely if the determining factor of the validity of donations of incorporeals is to be the degree to which a court finds the donee deserving.
A donee of a manual gift must also show by strong and convincing proof that the donor had the intent to presently and irrevocably divest himself of the thing and that real delivery was made. Succession of Woolfolk, 225 La. 1, 9, 71 So.2d 861, 864 (1954); Pardue v. Turnage, 383 So.2d 804, 805 (La. App. 1st Cir. 1980). Both lower courts ruled that no valid donation inter vivos had been made in part because of factual deficiencies in the donee's case. See 378 So.2d 543 (La.App. 4th Cir. 1980).
Particularly in view of these factual deficiencies, I am unwilling to stretch the literal language of article 1539 to uphold the transfers in this case. Since the majority offers no other rationale why these incorporeal credit-rights may be transferred without an authentic act, I must respectfully dissent.

ON REHEARING
CALOGERO, Justice.
Rehearing was granted in this case to reconsider our determination that Ms. Miller gave Mrs. Meyer the funds from the savings account and the bearer bonds and that each such gift constituted a valid inter vivos donation.
The facts surrounding the transfer of these items, in chronological order, are essentially as follows. About August 21, 1974, decedent and Mrs. Meyer went to the office of Schwegmann Brothers Giant Super Market and purchased the bearer bonds involved in this case. Decedent had previously consulted Mrs. Meyer's husband, a ranking employee in the management of Schwegmann's, and had told him of her intentions to buy the bonds and give them to Mrs. Meyer. After the bonds were issued, decedent gave the bonds to Mrs. Meyer, according to Mr. and Mrs. Meyer's testimony. Mrs. Meyer testified that she understood that the bonds were hers, but that she would have returned them to the decedent if she had been asked to. She also testified that she gave the decedent the interest coupons from the bonds until her death.
On January 30, 1976, after having discussed her plans with Mr. and Mrs. Meyer, and accompanied by Mrs. Meyer, the decedent closed out a savings account in her name and transferred the funds to an account styled "Mildred M. Miller or Mrs. Albertha S. Meyer (payable to either or survivor)." Mrs. Meyer testified that at the time of the transfer, decedent told her, "Albertha, I want you to have that." Nothing more was said about this money until shortly before decedent's death.
On May 19, 1976, Ms. Miller was brought to the hospital in an ambulance, suffering from a stroke. Mrs. Meyer accompanied Ms. Miller to the hospital. Both Mr. and Mrs. Meyer testified that Ms. Miller had told them that she was about to die and instructed Mrs. Meyer to go to the savings and loan association and withdraw the funds from the joint account. Mrs. Meyer testified that she first protested, but later complied with the decedent's instructions. The withdrawal was made on May 24, 1976.
During Ms. Miller's six day stay in the hospital prior to her death, the hospital *817 records indicate that the decedent was comatose and could not speak upon entering the hospital on May 19, was drowsy but cooperative on May 20, was semi-comatose on May 21, continuing to mumble, and again reverted back to the comatose condition on May 22, with no improvement noted on the charts until her death on May 25, 1976. Mrs. Meyer testified that she and the decedent did talk to each other during this period, and they could both understand each other. No other witnesses were called by either party.
Ms. Miller had never married, and was survived only by cousins, one of whom was Mrs. Albertha Meyer. Ms. Miller had lived alone but saw Mrs. Meyer daily, and had a room in Mrs. Meyer's house which was treated as Ms. Miller's room. Although Ms. Miller had written a will, it was invalid for want of form. The succession proceedings followed those for an intestate succession, and a succession inventory was filed by the administratrix. In the inventory of Ms. Miller's property, the administratrix had listed, among other things, the money from the joint savings account which had been withdrawn by Mrs. Meyer from the account prior to decedent's death and also the bearer bonds issued by Schwegmann's.
Mrs. Meyer filed a motion to traverse the inventory contending that the funds from the joint savings account and the bearer bonds were erroneously listed in the succession inventory, and that she was the owner of that property by virtue of an inter vivos manual donation from Ms. Miller. After a hearing on Mrs. Meyer's motion the trial court held that the bonds and cash were properly included in the succession inventory and the Court of Appeal affirmed. 378 So.2d 543.
This Court granted Mrs. Meyer's application to review the lower court rulings and in our original opinion reversed the rulings, finding that a valid inter vivos donation by manual gift had been made of both the funds from the savings account and the bearer bonds, and that the items belonged to Mrs. Meyer. After granting a rehearing in this case, we now affirm our original opinion insofar as it relates to the funds from the savings account, but find that there was no valid inter vivos donation of the bearer bonds.
Mrs. Meyer contends that Ms. Miller gratuitously gave her both the funds from the savings account and the bearer bonds and that those items thus belong to her. The administratrix of Ms. Miller's estate included both items in the succession inventory contending that a valid inter vivos donation had not been made of the property.
It is well settled that property can neither be acquired nor disposed of gratuitously except by donations inter vivos or mortis causa. La.C.C. art. 1467. Since Ms. Miller's will has already been held invalid (that is not contested here), for Mrs. Meyer to prevail in this case, it must be shown that a valid inter vivos donation of the property was made.
A donation inter vivos (between living persons) is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts its. La.C.C. art. 1468. The Code requires that such donations meet strict form requirements. La.C.C. art. 1467. It is provided that donations of immovables and movables, whether corporeal or incorporeal, be made by "an act passed before a notary public and two witnesses." La.C.C. art. 1536; La.C.C. art. 1538. The only Codal exception[1] to this form requirement is found in article 1539 which provides:
The manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality.
Since no authentic act was executed for either the donation of the funds in the savings account or the bearer bonds, the validity of these donations hinges on whether they were "manual gifts" under La.C.C. art. 1539, that is, whether they were corporeal movables actually delivered.
*818 Corporeals and incorporeals are defined in the Civil Code in article 461 which provides:[2]
Corporeals are things that have a body, whether animate or inanimate and can be felt or touched.
Incorporeals are things that have no body, but are comprehended by the understanding, such as the rights of inheritance, servitudes, obligations, and right of intellectual property.
Corporeal movables are things that normally move or can be moved from one place to another. La.C.C. art. 471. Incorporeal movables are the rights, obligations and actions that apply to a movable thing, such as bonds, annuities, and interests or shares in entities possessing juridical personality. La.C.C. art. 473.
As concerns the funds in the savings account, while it is true that the savings account, or the right to the funds therein, is an incorporeal movable, and thus as such not subject to manual gift, the cash, withdrawn from the savings account, is a corporeal movable and subject to manual gift provided there was actual delivery of the funds.
Mrs. Meyer contends that there was actual delivery of the funds even though it was she who withdrew the funds from the account. She contends that Ms. Miller did not have to actually hand her the cash, but that it was sufficient that she withdrew and possessed the funds at Ms. Miller's request, relying on the case of Succession of Gorman, 209 La. 1092, 26 So.2d 150 (1946) in support of her contentions.
In Gorman, Mrs. Gorman became ill and was hospitalized. She gave her half sister, Mrs. Muller, a power of attorney on a form provided by the bank, authorizing her to withdraw money from the account. At least three withdrawals were made, exhausting the account before Mrs. Gorman died. Before her death, Mrs. Gorman had handed the passbook to Mrs. Muller and informed a witness that she was giving it to her sister in the presence of the witness. The court said:
The tradition or delivery of movable effects takes place if the party to whom it is intended they should be transferred or delivered has them already in his possession. Civ.Code, art. 2478.
... The parties adopted the most expedient way of making and accepting the donation. It was not ineffective on that account. It would have been an idle ceremony for Mrs. Muller after withdrawing the money from the bank to hand it to Mrs. Gorman, the donor, so that Mrs. Gorman in turn might give it to Mrs. Muller, the donee. The law takes no account of useless formalities. In order to complete the manual gift it suffices that the will of the donor to give and the actual possession of the movable property by the donee operate simultaneously...." 209 La. at 1097-1098, 26 So.2d at 151.
As early as 1830 this Court approved a manual gift of money by a father to his daughter when delivery was made as follows: the father permitted the daughter's husband to sell a piece of real property and receive the proceeds of the sale as the daughter's agent. Chachere v. Dumartrait, 2 La. 38 (1830). Delivery was again an issue in Succession of Zacharie, 119 La. 150, 43 So. 988 (1907). The donor there caused money to be deposited to the joint account of two of his sisters. The Court, approving the transfer as a manual gift, cited C.C. 2477:
The tradition or delivery is the transferring of the thing sold into the power and possession of the buyer.
In Gibson v. Hearn, 164 La. 65, 113 So. 766 (1927), it was held that the delivery of funds to the undertutor of an infant, which he deposited in a bank in his name as agent for the infant, completed the gift, citing C.C. 1541.
*819 Therefore, it is clear from this prior jurisprudence that there is no need for the donor to actually hand over the cash to the donee. It is sufficient "that the will of the donor to give and the actual possession of the movable property by the donee operate simultaneously."
As noted in our original opinion, the donor expressed her unqualified intent, on several occasions, that Mrs. Meyer have the money, the last such expression being just prior to her death, while she was in the hospital. In fact, it was this final insistence which prompted Mrs. Meyer to go and withdraw the funds before Ms. Miller's death. Therefore, although Ms. Miller did not actually hand the funds to Mrs. Meyer, there was nevertheless a valid inter vivos donation by manual gift of the funds from the savings account.
As for the bearer bonds, we now conclude that the bonds are incorporeal movables and simply, by statute, not susceptible of manual gift. As stated above, inter vivos donations must meet strict form requirements unless they are given by manual gift (La.C.C. art. 1467; La.C.C. art. 1539), and only corporeal movables may be given by manual gift. La.C.C. art. 1539. The transfer of the bearer bonds in this case complied with neither method of donation, in that there was no act passed before a notary and two witnesses, and there was no manual gift of the bonds.
In our original opinion it was held that bearer bonds were subject to manual gift citing Succession of McCrocklin, 242 La. 404, 137 So.2d 274 (1962) and Succession of Moore, 40 La.Ann. 531, 4 So. 460 (1888). However, as pointed out by Justice Dennis in his dissenting opinion, neither of those cases is dispositive of the issue here. McCrocklin is distinguishable because it dealt with United States Treasury Bonds, and donation of those types of bonds is controlled by federal law; Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962). Moore similarly involved United States Treasury bearer bonds.
The Legislature has provided that incorporeal movables are not subject to manual gift and cannot be donated inter vivos except by an act passed before a notary and two witnesses. La.C.C. art. 1536; La.C.C. art. 1539. La.C.C. art. 473 specifically provides that the rights and obligations that apply to bonds are incorporeal movables. Because of this, and because there was no such notarial act passed in this case, we conclude that the bonds, even if delivered,[3] were not validly donated. Thus, the bonds remained the property of the deceased and were properly included in the succession inventory.

Decree
For the foregoing reasons we hold that the funds from the savings account should be excluded from the succession inventory because, being corporeal movables that were actually delivered to the donee, a valid inter vivos donation by manual gift of the funds was made. The bonds were properly included in the succession inventory because, being incorporeal movables insusceptible of manual gift, a valid inter vivos donation of the bonds was not made.
AFFIRMED IN PART; REVERSED IN PART.
WATSON, J., concurs as to the bonds but dissents as to the savings account.
DIXON, C. J., dissents with reasons.
LEMMON, J., dissents and will assign reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
It is not necessary for us to thwart the will of the decedent and hold that bearer bonds cannot be the subject of a manual gift.
Mildred Miller died May 25, 1976 after about a week in the hospital. She had never married, and was survived only by cousins, one of whom was Mrs. Albertha *820 Screen Meyer. For a few years before her death, decedent was in poor health, but worked until a few months before her last illness. She lived alone, but saw Mrs. Meyer daily, and had a room in Mrs. Meyer's house which was treated as her own.
About August 21, 1974, at decedent's request, Mrs. Meyer accompanied her to some offices of Schwegmann Brothers Giant Super Markets and purchased the bearer bonds involved in this case. Decedent had previously consulted Mrs. Meyer's husband, a ranking employee in the management of Schwegmann's, and had told him of her intentions to buy the bonds and give them to Mrs. Meyer. After the bonds were issued, there was little discussion about them between decedent and Mrs. Meyer. The testimony was that, as she gave Mrs. Meyer the bonds, decedent said, "Albertha, here are the bonds." Mrs. Meyer understood that the bonds were her own, but testified that she would have returned them to her if she had been asked, and (apparently without further discussion) gave her cousin the six month interest coupons until her death.
On February 24, 1976 decedent signed a typewritten will (invalid for want of form, and not at issue here) in which she stated: "I leave all that I die possessed of to my cousin Albertha Screen Meyer. Albertha and myself were raised together and she has been like a sister to me. When Esther and Uncle George died, if I did not have Albertha and Wilfred to turn to I would have been all alone. I know I will always have Albertha and Wilfred and they will always have me."
In his written reasons for judgment the trial judge found that the invalid will evidenced the "clear intention of the decedent to will her entire estate to the opponents (Mrs. Meyer)." As for the bearer bonds, the trial judge merely stated that the fact that they were in Mrs. Meyer's possession "does not meet the legal requirements for a legal donation."
Although delivery is essential for a manual gift, it is not always required that the donor in person place the object given in the hands of the donee. See note, "Donations Inter VivosBank DepositsDelivery," 21 Tul.L.Rev. 120 (1946). As for the evidence concerning the bonds, there is nothing, not even an inference to contradict the testimony that they were placed in the possession of Mrs. Meyer immediately upon issuance, where they remained until the trial of this suit. No inference to contradict Mrs. Meyer's testimony can be drawn from Mrs. Meyer's further testimony that she gave the interest coupons, without discussion, to Miss Miller as they accrued. Both Mr. and Mrs. Meyer testified on cross-examination that they would have returned the bonds to Miss Miller if she had asked, but there is nothing in the record to indicate that they were moved by anything other than consideration for their friend and relative, nor that Miss Miller had ever suggested such a condition.
Donations inter vivos, even of movable effects, required an authentic act for validity, under the terms of the Civil Code. C.C. 1538, 1536. Manual gifts, however, were exempt from these rigid formalities. C.C. 1539 provides:
"The manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality."
A quick reading of the Louisiana Civil Code would easily lead to the conclusion that bonds of business concerns, transferable by delivery, are not subject to manual donation. Donations of movables, immovables and "incorporeal things, such as rents, credits, rights or actions" are invalid unless an act of donation is passed before a notary and two witnesses. C.C. 1536, 1538; only the "manual gift, that is, the giving of corporeal movable effects,[1] accompanied by *821 a real delivery, is not subject to any formality." C.C. 1539. Bonds (since Act 728 of 1978) are specifically mentioned in the definition of incorporeal movables:
"Rights, obligations, and actions that apply to a movable thing are incorporeal movables. Movables of this kind are such as bonds, annuities, and interests or shares in entities possessing juridical personality.
..." C.C. 473.
Rights, obligations and actions that apply to bonds, therefore, are incorporeal movables. Rights, obligations and actions that apply to a cow are also incorporeal movables. Cows are movable, but corporeal. Bearer bonds are movable, but are they incorporeal, like the actions which apply to them? C.C. 461 defines:
"Corporeals are things that have a body, whether animate or inanimate and can be felt or touched.
Incorporeals are things that have no body, but are comprehended by the understanding, such as the rights of inheritance, servitudes, obligations, and right of intellectual property."[2]
In this state provisions for manual gifts were first codified in Article 1526 of the Civil Code of 1825. The Code Napoleon did not provide for manual gifts, and made no distinctions between corporeals and incorporeals or movables and immovables in regard to donations inter vivos. Instead, the Code provided that any instrument containing or importing ("portant") an inter vivos donation should be executed before a notary, in the form usual for contracts; the original instrument was to be kept on file by the notary. C.N. 931. It is significant that this provision only applies to written instruments which openly purport to be donations; it did not prevent donations from being made in another form. 3 M. Planiol, Treatise on the Civil Law § 2510, p. 219 (L.S.L.I. trans. 1959).
The primary purpose of requiring the notarial act was to insure the irrevocability of the donation; since the notary was required to retain the original copy of the act in his files, the donor was powerless to revoke the donation by destroying the instrument, as could be done in the case of an act under private signature. A secondary purpose of the requirement was thought to be to diminish any external influences that may have affected the donor. 3 M. Planiol, supra, § 2526, p. 233. Much the same purpose was achieved in the case of donations of movable things: a descriptive list of the effects was required to be annexed to the act of donation. C.N. 948. Compare C.C. 1538. This article contemplates the situation in which a donor makes a gift of a movable, yet nevertheless retains possession of it. Since the donor retains possession, it would be possible to transfer or destroy the objects of the gift. To prevent this, and to assure the irrevocability of the donation, the descriptive list served as a title to the movable effects. 3 M. Planiol, supra, §§ 2556-61, pp. 253-55.
Article 1526 of the Code of 1825, the predecessor of Article 1539, had no counterpart in the Digest of 1808 or in the Code Napoleon. The Louisiana articles, appearing to allow manual donation only of corporeal movables, worked a refinement upon *822 traditional French law, in which no notarial act was required for any donation that was actually effected by the real delivery of the object donated. Corporeal movables, of course, were typically the object of such gifts, since the transfer of possession conferred ownership. Aubry & Rau, Droit Civil Francais § 659, pp. 109-111 (L.S.L.I. trans. 1969).
In France, however, manual donations were not limited to corporeal movables; French commentators routinely accepted the idea that negotiable instruments could be donated without a notarial act, even though such instruments could not strictly be classified as corporeal movables. Planiol states:
"It is a traditional rule that manual gifts comprise only corporeal chattels. A creditor's claim can, therefore, not be transferred by a manual gift, even if it is represented by a negotiable instrument transferrable by endorsement. The ownership of the claim can be transferred only by an appropriate endorsement.
By exception, a creditor claim represented by an instrument to the bearer can be the object of a manual gift. In such a case, the claim is said to be incorporated in the instrument and belonging to the actual bearer." 3 M. Planiol, supra, § 2539, p. 238.
Aubry and Rau held the same view:
"Besides corporeal movables, the manual gift may have for its object credits and other rights evidenced by instruments payable to bearer, or by order paper endorsed in blank; the right contained in the instrument is transmitted by the delivery of the latter. ..." Aubry & Rau, supra, § 659, p. 110.
This result was possible in France because negotiable instruments do not, in themselves, contain or import a donation. The notarial act was required only when a written document purported to be a donation. Also, the donor's act of physically relinquishing possession of such instruments satisfied the purpose of making the donation irrevocable. See Aubry & Rau, supra, p. 109. Rendering a donation irrevocable was, of course, the chief reason for requiring the notarial act.
The Louisiana Civil Code made significant departures from the Code Napoleon, and it is not altogether clear why those changes were made. C.C. 1536, requiring a notarial act for donations inter vivos, applies to immovables and to incorporeal things such as rents, credits and rights or actions, none of which can be physically transferred from one person to another. The purpose of requiring a notarial act to effect donations of incorporeals and immovables would thus seem to be entirely evidentiary: the document manifests the delivery of things which cannot be seen or touched and things which, by definition, cannot easily be moved. The notarial act accomplishes a delivery of ownership. If, as has been suggested, the effort of preparing a notarial act is imposed to impress upon the donor the seriousness of the act of donation, it is impossible to explain why this same cautionary device is not imposed when donations of money are made, which could easily exceed the value of an incorporeal thing. Just as a tract of land cannot be physically transferred from one person to another, an incorporeal thing eludes delivery. Corporeal movables, however, are susceptible to physical transfer. Cf. C.C. 2247. It is for this reason alone that corporeal movable effects are exempted from the rule of C.C. 1536.
It is for the same reason that negotiable instruments should also be exempted from the rule, since the law establishes a method by which such documents can be physically transferred, either by delivery with endorsement or by delivery alone. See R.S. 10:3-202. Notably, not every incorporeal right is typically traded commercially, especially in the case of such things as rents and actions. Just the opposite is the case with checks, bonds and other negotiable instruments, for which a comprehensive scheme of commercial transferability has been devised. No purpose is served by requiring conformity with a dual system of transfer in order to accomplish the donation of negotiable instruments.
*823 As noted, the whole scheme of the commercial laws is based upon the concept of transforming a credit or right into a stylized, written document; since the negotiable instrument has a tangible form, it is possible to make a manual delivery of it. The valid possession of the physical document is proof that a real delivery occurred; there is no need for any further evidence of the transfer. Hence, the legitimate possession of a negotiable instrument serves the function of proving that a real delivery took place, representing the title or ownership of the incorporeal right to demand payment of the money which is the basis of the instrument. What is accomplished is no less than what is achieved by the manual donation of a corporeal movable, when the transfer of possession delivers title as well.
The application of the provisions governing donations inter vivos to negotiable instruments has been the subject of much discussion and not a little confusion. See, e. g., Oppenheim, "The Donation Inter Vivos," 43 Tul.L.Rev. 729 (1969); Comment, "Donations Inter Vivos," 22 Loy.L.Rev. 743 (1976); Comment, "Manual Donation of Obligations," 9 Tul.L.Rev. 602 (1934-35). The problem is that negotiable instruments are subject to special laws which govern their transfer, and these laws could not always be harmonized with the provisions governing donations.
It has been held that United States bearer bonds can be donated without a notarial act. Succession of McCrocklin, 242 La. 404, 137 So.2d 274 (1961) where the plurality held the transfer governed by the Negotiable Instruments Law, and Succession of Moore, 40 La.Ann. 531, 4 So. 460 (1888) where the bonds were found to be corporeal movable effects. One decision held that other types of bonds are corporeal movables, and may be donated manually. Succession of Sanders, 171 La. 569, 131 So. 674 (1930). Another decision has held such bonds to be incorporeals. Succession of Land, 212 La. 103, 31 So.2d 609 (1947).
The decisions cited above are an example of the erratic course that has been followed in determining whether negotiable instruments can be donated without a notarial act. Another example can be found in the case of checks, to which a small body of jurisprudence has been devoted. When a check is given as a gift, a legitimate manual donation is considered to have occurred if the donee cashes the check before the donor's death. Succession of DePouilly, 22 La.Ann. 97 (1870). In that case, it was explained that the check was simply the vehicle by which the money was donated. A certified check, however, need not be cashed prior to the donor's death to be considered subject to a valid manual donation. Succession of Leroy, 157 La. 1077, 103 So. 328 (1925). In that situation, the funds which the check represents are segregated from the donor's account, and the drawee bank becomes primarily liable for payment. And, if a check is not drawn on the donor's account, but is endorsed by the donor as payee and then given to the donee, that check is considered to have been manually donated, even if the donor dies before it is cashed. Burke v. Bishop, 27 La.Ann. 465 (1875). See also Succession of Turgeau, 130 La. 650, 58 So. 497 (1912); Succession of Desina, 123 La. 468, 49 So. 23 (1908); Stauffer v. Morgan, 39 La.Ann. 632, 2 So. 98 (1887). It has been stated that such a check "represents money, and to all practical intents is money." Burke v. Bishop, supra, at 467.
These decisions demonstrate the blurring of the distinction between a negotiable instrument and the "sum certain in money" that it represents. In each situation, the funds that were to be paid to the holder of the check were beyond the control of the donor, either because the funds had already been reduced to possession by the donee, or because nominal ownership of the funds was not vested in the donor but in a third party. The decisions also demonstrate the confusion which inevitably arises when there are, in the law, two systems governing the formalities of transfer of ownership of the same objects.
If certain formalities are observed, both checks and bonds are negotiable instruments. No real distinction can be made *824 between them in terms of this characteristic. They are both writings, signed by the maker, containing an unconditional promise or order to pay a sum certain in money at a definite time. See R.S. 10:3-104. In the present case, the bearer bonds were executed by Schwegmann Brothers Giant Super Markets. The decedent was not the maker of the bonds, but the holder; the bonds were not to be paid by her, but paid to her. These bonds and checks that are drawn on an account other than the donor's are analogous. The two types of instruments do not impose an obligation upon the donor, but represent a credit against a third party. Once the instrument is legitimately transferred, the donor is powerless to intercede in halting payment; the donation is as irrevocable as it can be under the law. Both instruments give the holder the right to receive a sum of money in the possession of a third party.
The jurisprudence treating checks thus supports the conclusion that bearer bonds may be donated manually. However, it is preferable to base this decision upon a more fundamental rationale.
It has been said that a negotiable instrument, like any other written instrument, should not be confused with the underlying right that it evidences. Thus, while a bearer bond is undoubtedly a corporeal movable, it is explained that the bond itself is merely the physical evidence of an incorporeal credit or right. This distinction, often made in the jurisprudence, has a certain symmetrical appeal. Yet it is questionable whether the distinction is valid in relation to commercial instruments, where it is the document itself which is infused with value. In effect, the distinction between the incorporeal right and the documentary evidence of it is practically extinguished, since the document not only evidences but embodies the right. The whole law of negotiable instruments and commercial paper is built upon the concept that a right, credit or obligation can be given a certain form and, once the instrument is confected in that particular form, it becomes the physical manifestation of what was once an incorporeal thing; its ease of negotiation and certainty of collection gives it intrinsic value. Unlike a written contract (see C.C. 1762), such an instrument is more than evidence of a rightit is the right, and valid possession of it entitles the holder to demand the discharge of the obligation which it embodies. The purpose of giving physical expression to such rights and credits is to create a system of transferability in which the transaction of obligations to pay money can be accomplished with ease and certainty. This purpose is not shared in the case of written contracts, where the written instrument is nothing more than evidence of an agreement. An authentic copy of a written contract serves the same evidentiary purpose as the original, but it could not be contended that the possession of a facsimile of a check, bond or bank draft would entitle the holder to demand the same rights as the holder of the original instrument. In this sense, the principle established in C.C. 1762 is not applicable to negotiable instruments, which do in fact confound the "contract" with the "instrument in writing." The instrument operates as a title, and confers ownership of the right which it embodies upon any legitimate holder. Given this understanding of negotiable instruments, it is difficult to perceive what purpose would be served, or what logical requirement satisfied, by giving legal force to an analytical distinction between a corporeal bond and the incorporeal right that it embodies.
It has been suggested that C.C. 1536 should be limited in its application"that it should not be extended to instruments the transfer and negotiation of which are governed by the commercial law." Lazarus, "The Work of the Louisiana Appellate Courts for the 1977-1978 Term," 39 La.L. Rev. 761, 762 (1979). See also "The Work of the Louisiana Appellate Courts for the 1976-1977 Term," 38 La.L.Rev. 395 (1978); "The Work of the Louisiana Appellate Courts for the 1975-1976 Term," 37 La.L. Rev. 421 (1977). The same position was espoused in an earlier case:
"... article 1536, R.C.C. applies only to such credits as are not transferable by mere delivery of title. See Laurent, vol.

*825 12, pp. 351, 352, Nos. 280, 281. Treasury notes, bank notes, gold and silver certificates, are likewise mere promises to pay money; yet no one doubts that they are subject to manual gift under R.C.C. art. 1539. Government bonds, state bonds, municipal bonds, corporate bonds are also mere promissory notes, with interest coupons attached, and this court has held that these are proper objects of a manual gift without formality whatever, and by mere delivery to the donee. See Succ. of Moore, 40 La.Ann. 531, 541, 4 So. 460." Succession of Leroy, 157 La. at 1084, 103 So. at 331 (1925) (St. Paul, J., concurring).
The view of Justice St. Paul is correct. C.C. 1536 should not be extended to instruments the transfer of which is governed by the commercial law. No reason has been advanced for requiring an act of donation before a notary and two witnesses to validate the gift of an instrument which can be transferred by mere delivery. Negotiable instruments are what they seem to be movables which can be felt and touched. They are themselves proof of the obligations expressed within them, and are therefore something in addition to those obligations. French doctrine permits the manual donation of such instruments, as does most of the Louisiana jurisprudence since the earliest years of the state.
For these reasons an incorporeal credit or right, embodied in an instrument negotiable in form, should be validly donated by delivery, or by endorsement and delivery, in conformance with the applicable commercial laws; such an instrument is a corporeal movable effect, exempted by C.C. 1539 from other formalities.
Our original decree ought to be reinstated.
NOTES
[1] Decedent executed a last will and testament, three months before her death, leaving all of her property to Mrs. Meyer, but the court declined to probate the will because it was invalid for insufficiencies of form.
[2] Arguably Mrs. Meyer withdrew the funds under the authority previously expressed by the donor, just as the donee in the Gorman case withdrew the funds under the authority of a power of attorney previously executed by the donor.
[1] The Civil Code articles are cited as they now appear after revision by 1978 La.Acts, No. 728. However, these revisions do not change the law. See official revision comments to the articles cited.
[2] Exception to the requirement of authentic form in the donation of negotiable instruments arguably might be based on Louisiana's Commercial Laws, La.R.S. 10:1 et seq., as was done in McCrocklin, supra. However, donations are not typically commercial transactions and different policy considerations are involved. Neither are the cases dealing with manual gifts of negotiable instruments readily explained by reference to the Uniform Commercial Code.
[1] There are other statutory exceptions to the form requirement, such as the Uniform Stock Transfer Act (La.R.S. 12:601 et seq.), but none are relied on here.
[2] The Civil Code articles are cited as they now appear after revision by Act. No. 728 of 1978. However, these revisions do not change the law. See the official revision comments to the articles cited.
[3] It should also be noted that the question of whether the bonds were actually delivered to Mrs. Meyer was decided against her in both lower courts.
[1] When the redactors of the Code referred to corporeal things, the term "choses" was used. See article 451, Civil Code of 1825. See also 2 A. Yiannopoulos, Property §§ 9-17 (2d ed. 1980). But when the redactors first drafted an article governing manual donations, they referred to corporeal movable effects (effets mobiliers corporels). Article 1526, Civil Code of 1825. The French text of the Code of 1825 is said to prevail over its English translation, when a discrepancy between the two exists. See Note, "Control of the French Text of the Code of 1825," 3 La.L.Rev. 452 (1941). The French term "effet," when used in a commercial context, refers to written engagements or promises: "Plus particulièrement, promesses rédigéees sous une forme reconnue légale, forme qui rend les auteurs et signitaires justiciables des tribunaux de commerce." Bescherelle, Dictionnaire Nationale (1855). It is possible that the redactors intended to include negotiable instruments among those corporeal movable effects which could be donated by manual delivery.
[2] As amended Act 728 of 1978, replacing prior C.C. 460, which provided:

"Things are divided, in the second place, into corporeal and incorporeal.
Corporeal things are such as are made manifest to the senses, which we may touch or take, which have a body, whether animate or inanimate. Of this kind are fruits, corn, gold, silver, clothes, furniture, lands, meadows, woods, and houses.
Incorporeal things are such as are not manifest to the senses, and which are conceived only by the understanding; such as the rights of inheritance, servitudes and obligations."