# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-1019

## SUCCESSION OF CECIL VANDERBILT GASSIOTT

**********

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. P-2013-071
HONORABLE PATRICIA C. COLE, DISTRICT JUDGE

**********

## SHANNON J. GREMILLION
## JUDGE

**********

Court composed of Jimmie C. Peters, Marc T. Amy, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

Scott Westerchil
Attorney at Law
301 South Third Street
Leesville, LA 71446
(337) 238-0019
COUNSEL FOR APPELLEE:
    Patricia Gassiott

Chad B. Guidry
Attorney at Law
Post Office Box 447
Kinder, LA 70648
(337) 738-2280
COUNSEL FOR APPELLANT:
    Jason Gassiott
    Redena Gassiott Droddy

**GREMILLION, Judge.**

The children of decedent, Cecil Vanderbilt Gassiott, appeal the trial court's judgment finding that his wife, Patricia Gassiott, did not have to reimburse decedent's estate for $77,768.83. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Cecil and Patricia were married at the time of Cecil's death on June 21, 2013. They executed a prenuptial agreement in May 2004, providing for a separate property regime. Cecil died testate, having executed a will on January 25, 2008. In April 2010, Cecil recovered funds from a medical malpractice lawsuit. Cecil deposited one-half of the proceeds into a separate checking account and the other half in a joint savings account shared by Cecil and Patricia. On June 17, 2013, Patricia withdrew the balance of the joint savings account, totaling $77,768.83.

Cecil's children, Jason Gassiott and Redena Droddy, filed a rule to show cause seeking the return of the $77,768.83 withdrawn by Patricia. Following an April 30, 2014 bench trial, the trial court found that the money in the savings account was for Patricia's benefit, and the estate was not due reimbursement of the $77, 768.83. The children now appeal.

## ISSUES

1. Appellant contends that the Trial Judge erred or abused her discretion in finding that the decedent had capacity to effectuate a donation inter vivos at the time of the $77,768.83 withdrawal.

2. The Trial Judge erred or abused her discretion in finding that the subject withdrawal met the formal requirements to constitute a donation inter vivos.

**DISCUSSION**

We have reviewed the record and adopt the trial court's recitation of the facts as our own. The trial court issued extensive reasons for judgment, stating in part:

> As to the separate settlement money, the court finds that the money in the savings account was placed there for the benefit of Patricia. Cecil Gassiott's donative intent was exhibited by the manner in which he opened the accounts at Capital One. The savings account had Patricia Gassiott's name on it but the checking account did not. Both he and his wife had to sign the savings account documents. Cecil Gassiott appeared to be a very meticulous man as evidenced by his pre-nuptial agreement, his will, and the insurance policies for his children. He took care of his children with the insurance policies and he took care of Patricia Gassiott with the savings account. This was confirmed by his statements to his preacher, Reverend Johnson, months before his death on June 21, 2013. He made it plain to Reverend Johnson that he put "some money in the bank for Pat and the kids don't know about it." The money was to take care of her because "she took care of him." He told his preacher that he did not want Pat to have any struggles. He, also, told the preacher that he had some money and the house for his children. This is further evidenced by the fact that the money in the savings account was never used or withdrawn by Cecil Gassiott after the initial deposit was made (as opposed to the money he put in the Capital one checking account.) The court finds that Cecil Gassiott made a donation inter vivos of money to his wife and placed same in a saving account opened by them for her benefit and containing her name Patricia Gassiott accepted that donation and signed bank documents evidencing said acceptance.

*Donation Inter Vivos*

The initial issue we must address is a legal one. "A donation inter vivos is a contract by which a person, called the donor, gratuitously divests himself, at present and irrevocably, of the thing given in favor of another, called the donee, who accepts it." La.Civ.Code art. 1468. Donations inter vivos must be by authentic act unless an exception applies. La.Civ.Code art. 1541. "The donation inter vivos of a corporeal movable may also be made by delivery of the thing to the donee without any other formality." La.Civ.Code art. 1543.

2

Louisiana Civil Code article 1550 (emphasis added), effective January 1, 2009, addresses certain exceptions to the requirement that the donation of incorporeal movables requires an authentic act:

> The donation or the acceptance of a donation of an incorporeal movable of the kind that is evidenced by a certificate, document, instrument, or other writing, and that is transferable by endorsement or delivery, may be made by authentic act *or by compliance with the requirements otherwise applicable to the transfer of that particular kind of incorporeal movable.*

> In addition, an incorporeal movable that is investment property, as that term is defined in Chapter 9 of the Louisiana Commercial Laws, may also be donated by a writing signed by the donor that evidences donative intent and directs the transfer of the property to the donee or his account or for his benefit. Completion of the transfer to the donee or his account or for his benefit shall constitute acceptance of the donation.

Louisiana Revised Statute 10:3-203(e) provides that "Donations inter vivos of instruments shall be governed by the provisions of this Chapter notwithstanding any other provision of the Louisiana Civil Code or of any other law of this state, relative to the form of donations inter vivos, to the contrary." It appears that the trial court, closely tracking the language of La.Civ.Code art. 1550, found that when Patricia signed the documents creating the savings account, she "accepted" a donation of funds from Cecil.

Since the enactment of La.Civ.Code art. 1550, there has been little jurisprudence addressing this issue. It had long been held that savings accounts are incorporeal movables that required the formality of an authentic act for a donation inter vivos to be valid. *See Basco v. Central Bank & Trust Co.*, 231 So.2d 425 (La.App. 3 Cir. 1970). Appellants argue:

> A savings account is clearly an incorporeal movable. However, a savings account is not transferable by endorsement or delivery. As indicated above they can only be donated by executing an authentic act. There are no "special rules" applicable to this type of movable.

Accordingly, the default rule, which requires two witnesses and notary, must be adhered to for a valid donation[.]

Appellants cite numerous cases decided prior to the enactment of La.Civ.Code art. 1550 and La.R.S. 10:3-201. It is clearly no longer the law that an authentic act is required pertaining to the transfer of negotiable instruments as defined under La.R.S. 10:3:201. However, appellants make a valid point that a savings account is not a negotiable instrument transferable by endorsement or delivery. Nevertheless, La.Civ.Code art. 1550 provides for other transfers evidenced by certificates or documents as long as the requirements applicable to that type of transfer have been met. There is no dispute that the joint savings account was validly created. A document issued by the bank listing the account information naming Cecil or Patricia as account holders was submitted into evidence. Once Cecil negotiated the settlement check and deposited the funds into the joint account, when coupled with his donative intent, the donation was effectively complete. Either could withdraw funds from the account at any time. *See* La.R.S. 6:312. Thus, for all practical purposes, a party divests himself of his control over an account when he names a joint co-owner who has identical rights to the funds.

Appellants cite *Broussard v. Broussard*, 340 So.2d 1309 (La.1976), in which a husband purchased savings certificates in he and his wife's names with funds received from a settlement. The supreme court stated:

> There was no actual delivery of the cash to Mrs. Broussard. The purchases of certificates in the names of both spouses, without an actual withdrawal and delivery of funds to Mrs. Broussard, did not effect a manual gift or a donation to her. Rather, the purchases were analogous to a deposit in a joint savings account, which in and of itself, will not transfer ownership of the funds. Furthermore, an account on deposit is an incorporeal right, La.CC. arts. 460, 474,

4

> which may only be donated by a notarial act in compliance with Article 1536.

*Id.* at 1313 (citations omitted). Notably, however, unlike in this case, the supreme court found that the husband did not have the required donative intent.

Further, even prior to the enactment of La.Civ.Code art. 1550 and in contravention of its prior holdings, the supreme court has gone to great lengths to enforce the donative intent of the deceased pertaining to the withdrawal of cash from a joint savings account in the absence of a notarial act. *See Succession of Miller*, 405 So.2d 812 (La.1981). In *Miller*, the deceased opened a joint savings account under the names of "Mildred M. Miller or Mrs. Albertha S. Meyer." Meyer withdrew the $7,599.72 balance of the account the day before Miller died. The supreme court characterized the funds withdrawn from a jointly held savings account shortly before the death of the deceased as a corporeal movable, thus requiring no authentic act. The supreme court stated:

> A notarial act is required for the valid donation inter vivos of an incorporeal movable. C.C. art. 1536. However, the manual gift of a corporeal movable, accompanied by real delivery, is not subject to any formality. It is therefore evident that the savings account (an incorporeal movable) was not subject to manual gift, but the cash withdrawn from the account (a corporeal movable) could be subject to manual gift.
>
> . . .
>
> The critical inquiry in the present case is whether the record establishes that decedent maintained an intention to donate the funds to Mrs. Meyer at a time when Mrs. Meyer possessed the funds in a form susceptible of manual gift.
>
> . . . .
>
> Accordingly, we hold that although decedent did not hand over the funds in cash to Mrs. Meyer and did not affirmatively demonstrate donative intent after the funds were converted to cash, Mrs. Meyer's possession of the cash, in accordance with

5

> decedent's express wishes, operated simultaneously with decedent's continuing will to accomplish a donation inter vivos.

*Id.* at 812-13.

The exact same situation occurred here. Patricia could have withdrawn the funds from the joint account at any time, making the cash a corporeal movable. Thus, there are potentially two means by which the donation inter vivos was effectuated: via donation at the time of creation of the joint savings account or via the conversion of the funds to a corporeal movable upon withdrawal thus requiring no formality. Regardless of the chosen method, there is no legal error in the trial court's finding that a valid donation inter vivos was completed.

### Donative Intent

Donative intent is a question of fact which we will not reverse in the absence of manifest error. *Rose v. Johnson*, 06-518 (La.App. 3 Cir. 9/27/06), 940 So.2d 181, *writ denied*, 05-2528 (La. 12/15/06), 944 So.2d 1273. We agree with the trial court that Cecil's intent was very clear, not only at the time he created the savings account, but from that point thereafter. At the time the joint account was created, Cecil and Patricia had a separate property regime. Cecil put half the funds in a separate account that was undoubtedly his separate property. He put the other half into the joint savings account. In the two weeks prior to his death, Cecil instructed Patricia to leave his bedside at the hospital and withdraw the funds. Patricia testified that she declined to do so staying by Cecil's side during his week-long hospital stay. Only after returning home, and at Cecil's insistence, did Patricia withdraw the funds. Further, it was clear that Cecil purposely kept the account from his children, neither of whom knew of its existence nor that the lawsuit had been settled, in an effort to be sure that Patricia would receive the

6

funds he set aside for her. We find no manifest error in the trial court's credibility determinations and finding that Cecil intended for Patricia to have the money in the joint account. Accordingly, appellants' assignments of error are without merit.

## CONCLUSION

The judgment of the trial court ordering that Patricia Gassiott did not owe reimbursement to the estate of Cecile Vanderbilt Gassiott is affirmed. All costs of this appeal are assessed to the appellants, Jason Gassiott and Redena Droddy.

**AFFIRMED**.