This suit has for its objective a determination of the ownership of $310 to the credit of Charles F. De Monde's checking account in the First National Bank of Shreveport, Louisiana, on January 26, 1942, the date of his death.
Plaintiff is the adopted son and universal legatee of the deceased, while defendant, Mrs. Jeanette Livingood, is his sister and nearest of kin.
The pleadings disclose that plaintiff and Mrs. Livingood each asserted claim to the $310 but in brief in this court defendant confines her assertion of ownership to $140 of the deposit under an alleged contract creating a joint bank account between her and the deceased with the right of survivorship; or, in the alternative, $70 thereof under said contract. The bank had no interest in the ownership of the deposit and relieved itself from the litigation and liability *Page 403 
for costs, etc., by depositing the amount into the court's registry to be paid to whom due.
The lower court held that the entire deposit belonged to the deceased at his death and gave judgment for plaintiff as prayed for by him, and defendant appealed.
On January 6, 1938, C.F. De Monde opened a checking account in the First National Bank of Shreveport, Louisiana, with a deposit of $1,000. Three checks against the account, the last being paid on February 26, 1938, reduced the deposit to $441.36. On April 18, 1938, he made a deposit of $50, which raised the balance to $491.36. The account remained in this condition until June 23, 1938, when the deceased and the defendant signed and delivered to the bank a joint account card whereon is printed the following, to-wit: "All deposits made by us or either of us at any time to the credit of the above account shall be made under the names of all, and all funds therein shall at all times be payable to either or payable to either of the survivors, whether the other or others be living or not."
The following reflects the account's condition during the period between June 23, 1938, to De Monde's death, viz.:
 "Account After June 23, 1938:
Checks Date Deposits Balance
 50.00 Aug. 27 '38 441.36
 50.00 Oct. 24 '38 391.36
 50.00 Nov. 29 '39 341.36
 141.36 Jul. 10 '39 200.00
 Jan. 9 '40 35.00 235.00
 Feb. 7 '40 10.00 245.00
 15.15 Feb. 13 '40 229.85
 14.85 Aug. 9 '40 215.00
 Sep. 4 '40 25.00 240.00
 Oct. 14 '41 20.00 260.00
 Nov. 13 '41 10.00 270.00
 Dec. 29 '41 25.00 295.00
 Jan. 1 '42 15.00 310.00
— ------ --------
$321.36 $140.00"

A copy of the individual ledger sheet bringing the account to and including August 27, 1938, discloses it to have been in the name of "C.F. De Monde or Jannett D. Livingood, 1743 Line Avenue, Shreveport, Louisiana." This was brought about by simply typing "or Jannett D. Livingood" on the ledger sheet after De Monde's name. Thereafter ledger sheets show the account to have been in the name of the deceased, "c/o Mrs. W.E. Livingood, 615 Euclid Avenue, Shreveport, Louisiana." Mr. B.K. Dorman, Vice-President of the bank, testified that the account at all times after June 23, 1938, was joint; that the change on the ledger sheets was the result of typographical error.
Each deposit after June 23, 1938, excepting that of $10 on November 13, 1941, the deposit slips show, was made for the account of C.F. De Monde. Three of the slips are in the handwriting of De Monde. The deposit slip for the excepted $10 reads for the account of "C.F. De Monde and Jeannette D. Livingood", and is in the handwriting of the deceased. No effort was made to prove who signed the six checks against the account aggregating $321.36. It will be observed that after June 23, 1938, checks against the account exceeded deposits by $181.36. The deposits for this period amounted to only $140.
From defendant's present position it is clear that she concedes that the joint account operated only prospectively. That is, that it did not comprehend nor affect the deposit to the deceased's credit prior to June 23, 1938.
Appellee's counsel in brief and orally state that the learned trial judge held that defendant had not satisfactorily proven that she made any contributions to the joint account; that the testimony adduced in support of the contention that her funds in whole or part made up some of the deposits after June 23, 1938, was too vague and indefinite to serve as the basis for a judgment. We are not prepared to differ with this factual finding. It is certainly not manifestly incorrect.
The deceased owned a residence at Municipal No. 1743 Line Avenue in the City of Shreveport, which, save a room for himself, he leased out. He, therefore, had a monthly income, the exact amount of which is not shown. Mrs. Livingood resided with her husband, W.E. Livingood, at 615 Euclid Avenue in said city.
The only testimony offered to prove that Mrs. Livingood contributed to the joint account is that of herself and husband. She testified that:
"Q. From and after that date, June 23, 1938, did you contribute any funds that went to the credit of that account? A. I did occasionally when he came down and *Page 404 
ate lunch with us and he said he was going to the bank I would give him ten or twenty dollars."
Concerning contributions to the joint account and the reason for its creation, she testified:
"Q. What was the purpose of this joint account, Mrs. Livingood? A. It was for Charles and I to take a trip, go to Pennsylvania where we were born, at some time.
From the time of the opening of the account were you saving nd making contributions to the account for that purpose? A. Yes, or that purpose only; he wanted to go back so badly * * *
Mr. De Monde, your brother, would call on you for funds to eposit to the account, and you contributed from time to time? A. es, he would come and tell me he was going to put a little in and would give him as much as I could and Mr. Livingood understood it s for that purpose, for our trip, some time."
Mr. Livingood corroborated his wife's testimony and added that he also gave the deceased money to "put in the bank to this account."
It is not without unusual significance that while the joint account was created on June 23, 1938, assertedly for the purposes above mentioned, no deposit to the account was made until January 9, 1940, a period of nearly nineteen months, whereas for the same period $291.36 were withdrawn. Mrs. Livingood testified that from the opening of the joint account she made contributions to it. The record positively shows that the account instead of becoming a sinking fund to finance the contemplated trip to Pennsylvania, was being regularly depleted by withdrawals, — these exceeding deposits by $181.36. It is passing strange that the joint account, created for the purposes stated by the Livingoods, for so long a period was not augmented by a single deposit. That does not argue strongly for the asserted yearning to visit the old birthplace. Why would the decedent wish to create a joint account to accumulate funds for a visit to Pennsylvania when, all the while and to his death, he had ample funds in bank to defray the expenses of such a trip? We are unable to perceive any reason for so doing.
It is our opinion that the joint account was consented to and arranged by the decedent simply for convenience of withdrawals and possibly was an attempted donation. Defendant doubtless had the right to check against the account for the benefit of the decedent, and possibly for her own uses. She at no time had any proprietary interest in the account.
It is contended by the defendant that the stipulation on the joint account card that all funds in said account "shall at all times be payable to either or payable to either of the survivors whether the other or others be living or not", means that the ownership of the balance in said account devolved upon her as survivor; and to support this contention common-law authorities and Act No. 188 of 1908 are cited. Common-law authorities are not pertinent in view of our own laws governing such transactions. Nor do we think the cited act sufficient in its provisions to afford defendant any relief.
Having reached the conclusion that defendant made no contribution to the joint account it is pertinent to query: By what possible right could she claim to own the $140 or any part of it? 7 American Jurisprudence, Folio 300 et seq., in general terms, discusses this question. It says:
"Where money belonging to one person is deposited to the account of himself and another, or where money deposited by the owner to his own account is changed to the account of himself and another, the relation which is thereby created depends primarily upon the intention of the depositor. It may be that such deposit is made for the mere convenience of withdrawals, with no intention of passing title from the depositor, or it may be that the intention was to create a joint interest in the other depositor either presently or at the death of the depositor."
* * * * *
"In cases involving such deposits, questions frequently arise concerning the right of the one other than the original owner to the fund upon the death of the original owner. Apart from the contract theory, which is comparatively rare, this leaves the title of the survivor to rest upon a gift, trust, or bequest. The bequest drops out of consideration, because it is not claimed that the transfer is in the requisite form to constitute a valid bequest, i.e., there is no compliance with the statute of wills. There thus remain two theories, upon one or the other of which the right of the survivor to the fund must be based, i.e., gift or trust. Unless the survivor can show title *Page 405 
in one of these ways, his claim must fail."
It is almost equally as clear that defendant has no right to any of said deposits under title of gift or donation inter vivos, because it is indispensable to the transfer of title to a credit by gift or donation that the instrument intending to accomplish such result be in notarial form. Civil Code, Article 1536. A credit in bank is not a corporeal movable and for this reason its transfer to another may not be effected by manual gift. Civil Code, Article 1539.
Counsel for plaintiff say that the lower court predicated the legal phase of its decision upon Vercher v. Roy et al.,171 La. 524, 131 So. 658, 659. Defendant's counsel argue that this case is not pertinent because therein a bank's certificate of deposit was involved, whereas in the present case the right of survivor under contract is the issue. A close study of the Vercher case, we think, reveals that the principles therein announced have application to the facts of the case at bar. The opinion in that case discloses that Emile Vercher, about one month prior to his death, deposited in the People's Bank of Natchitoches, Louisiana, $2,600 and received therefor a certificate of deposit payable to himself "or in case of his death to Laura Roy", a daughter. Upon Vercher's death Laura Roy refused to deliver the certificate of deposit to the administrator of the succession, contending that under its plain wording she became the owner thereof at Vercher's death, and was entitled to collect the amount at maturity from the bank. Her contentions were rejected by the lower court and the Supreme Court. The Supreme Court held that the certificate of deposit was not an incorporeal movable and, therefore, not subject to transfer by manual gift; that it simply evidenced a credit of Vercher in the bank, an obligation on its part to pay, which could only be transferred by instrument in the form (notarial) prescribed by law.
In the Vercher case the certificate of deposit plainly stated that it should be payable to a third person on the death of the payee. Here, the contention is that the joint deposit card stipulates that any balance of account on the death of one of the parties, shall be paid to the survivor. In both cases it is contemplated that the ultimate right of the third person to the fund represented in the credit should arise or come into existence only upon the death of the other.
Of course, the deposit should not go to defendant under trust title. No such contention is made nor could it be successfully made under the facts of the case, in view of our own laws governing same.
It does not appear that Act No. 188 of 1908 has received judicial interpretation. This act provides that when a deposit in a bank has been made under the names of two or more persons, "payable to either or payable to either of the survivors, such deposit, or any part thereof or any interest or dividend thereon, may be paid to either of said persons, whether the other or others be living or not." The act further provides that any such payment by the depositary bank shall discharge it from all liability as such.
It seems fairly clear that this act simply vests in the depositary bank a discretion in cases falling within its terms; such bank "may" pay the deposit to the survivor or survivors or not as it sees fit. If it does make payment to the survivor or survivors no recourse thereafter may be had upon the bank for having done so. This does not mean that by such a payment the right of ownership in whole or part to the deposit of the heirs of a deceased or recourse against the one to whom payment is made are to any extent abridged or affected. It simply means that when the bank makes such a payment to the survivor or survivors it is fully protected for having done so, and thereafter all rights to the amount thus paid are relegated to future action, if any, among the legal owners or claimants thereof.
Rules governing the common-law relation of joint tenancy and tenancy in common have no application to a case of this character arising in this state. Ownership of property, real or personal, in this state may arise only in the manners expressly established and recognized by its laws; and divestiture of such ownership may be effectuated only in the manner and form as by them directed.
Lastly, appellant complains of the judgment in that it is in personam and condemns her to pay interest from judicial demand. Plaintiff did not pray for any interest whatever and, of course, is entitled to none. *Page 406 
Appellee has not had possession of the $310. It is and has been since the early stages of this suit in the custody of the court. Appellee is the owner of the amount and a judgment so decreeing and ordering the clerk of court to pay it over to him will meet legal requirements.
Therefore, the judgment appealed from is amended by deleting therefrom the award of interest from judicial demand, and by decreeing plaintiff to be the owner of and entitled to have paid over to him the $310 in the registry of the court, and it is so ordered. Appellant is cast for all costs.
DREW and HAMITER, JJ., concur.