GARRETT, J.
h Henry L. Himes appeals from a trial court judgment which (1) found that his late father, Thomas A. Harrison, made a valid inter vivos donation when he transferred a large sum of money to his great niece, Susan C. Speed, about a year before his death, and (2) granted Ms. Speed’s motion to withdraw the funds from the registry of the court. We affirm the trial court judgment.
FACTS
This case has been before the court previously, and the prior opinion recites the facts in detail. See In re Succession of Harrison, 48,432 (La.App.2d Cir.11/8/13), 129 So.3d 681, writ denied, 2014-0273 (La.4/4/14), 135 So.3d 1185. To briefly recap, Mr. Harrison, age 94, died intestate on January 1, 2011. His son, Mr. Himes, filed a petition for possession in April 2011, and an ex parte judgment of possession was granted in his favor as the sole heir. In June 2011, Mr. Himes filed a motion to compel turnover of succession property, which asserted that Ms. Speed was in possession of certain tangible items and that she was in receipt of $87,000 from Mr. Harrison’s account at Capital One Bank (“COB”). The court issued an interim order directing Ms. Speed to deposit a cashier’s check for $85,000 into the registry of the court and to turn over to Mr. Himes certain specific items. She complied. In January 2012, Ms. Speed filed exceptions of no right of action and prescription/per-emption. These exceptions argued that Mr. Himes, who was born out of wedlock, had not pleaded that he was formally acknowledged or established paternity within a year of Mr. Harrison’s death. Both exceptions were sustained by the trial court. 1?, However, this court reversed on appeal and remanded for further proceedings.
On remand, Mr. Himes filed a motion to withdraw funds from the court registry in July 2014. In opposition, Ms. Speed contended that her great uncle made a valid inter vivos donation to her when he had her accompany him to the bank and transferred funds from his accounts into a new savings account in her name.[1] Thus, she maintained that the funds were no longer part of Mr. Harrison’s estate at the time of his death.
A hearing was held on Mr. Himes’s motion to withdraw funds on August 25, 2014. Testimony was given by Ms. Speed and Meter Johnson, the COB branch manager. Ms. Speed testified that, in the fall of 2009, her great uncle surprised her with the idea of giving her money to help her care for herself and her mother (his niece). On January 29, 2010, she accompanied him to the bank where the transactions to implement his idea were carried out. She testified that she did not spend any of the money prior to Mr. Harrison’s death. She eventually gave some money to various ministries. Ms. Speed further testified that she closed the savings account when she complied with the court’s order to deposit the funds into the registry of the court.
The bank manager, Ms. Johnson, also testified. While she stated that Mr. Harrison seemed “different” on the day of the transactions, she did not agree that he was acting “peculiarly” and conceded that she was not [¡¡concerned enough to call the police. Although Ms. Johnson testified that no cash actually went from hand to hand, she stated that the cash from Mr. *581 Harrison’s accounts was placed in the new account created for Ms. Speed. When asked if the transfer was all done electronically, she replied, “Paperwork.” Both witnesses admitted that, during the period between the transactions and his death, Mr. Harrison never expressed a desire to get the money back. Following arguments, the trial court denied Mr. Himes’s motion to withdraw the funds from the court registry. It observed that there was sufficient evidence that a donation took place and that the issue of Mr. Harrison’s capacity to donate was not before the court.
Ms. Speed then filed her own motion to withdraw the funds from the registry of the court in September 2014. Mr. Himes opposed the motion and sought nullification of the donation to Ms. Speed. He contended that such a donation must be in authentic form, pursuant to La. C.C. arts. 1541 and 1550, and that it left Mr. Harrison without enough for subsistence, in violation of La. C.C. art. 1498. He further argued that he was a forced heir and that the donation impinged on his legitime under La. C.C. art. 1495.
Another hearing was held on Ms. Speed’s motion to withdraw funds on November 24, 2014. The matter was submitted following argument. On December 15, 2014, the trial court rendered extensive oral reasons for judgment in open court and ruled in favor of Ms. Speed. The trial court reviewed the relevant jurisprudence. In particular, the court relied upon Succession of Gorman, 209 La. 1092, 26 So.2d 150 (1946), in which a similar donation was upheld where the parties adopted “the most expedient |4way of making and accepting the donation” and the Louisiana Supreme Court found that “the law takes no account of useless formalities.”
The trial court also looked to Mr. Harrison’s intent and the “extraordinary efforts” he went to in carrying out his wish to give his money to his great niece. Namely, he took Ms. Speed with him to the bank; he asked to talk to the manager, a person he trusted and with whom he had a working relationship; he declined offers of other bank employees to assist him; he waited patiently for Ms. Johnson to return; and he instructed her on what he wished to do with his money. The court further considered that, during the period between the transactions and his death, Mr. Harrison never made any effort to revoke the donation. The court noted that, while Ms. Johnson thought his actions were odd, she did not find it odd enough to do anything to make any effort to stop the transactions. Finally, the court found it significant that Ms. Speed left the money alone until a period of time after Mr. Harrison’s death.
The court also dismissed Mr. Himes’s other arguments. As to the contention that the donation divested Mr. Harrison of all his property, the court noted that Mr. Harrison obviously had no problem caring for himself financially until his death. The court dismissed his forced heirship argument because nothing in the record suggested that Mr. Himes was, in fact, a forced heir, i.e., permanently disabled or age 23 or younger.
Judgment in favor of Ms. Speed- was signed on December 29, 2014. It stated that there was a valid inter vivos donation of the funds by manual gift. The motion to withdraw funds was granted, and the clerk of court was ^ordered to- disburse the funds on deposit in the registry of the court to Ms. Speed. Costs were assessed to the plaintiff. Mr. Himes filed a suspen-sive appeal,
DONATION INTER VIVOS
Mr. Himes argues that the trial court erred in finding that Mr. Harrison’s transfer of funds to Ms. Speed was a valid inter *582 vivos donation. He maintains that the donation was invalid because it was not made by authentic act,, as required by La. C.C. arts. 1541 and 1550. Ms. Speed maintains that the trial court correctly determined that the donation was valid. .

Law

A donation inter vivos is a contract by which a person, called the donor, gratuitously divests himself, at present and irrevocably, of the thing given in favor of another, called the donee, who accepts it. La. C.C. art. 1468. Donations inter vivos must be by authentic act unless an exception applies. La. C.C. art. 1541. The donation inter vivos of a corporeal movable may also be made by delivery of the thing to the donee without any other formality. La. C.C. art. 1543.
La. C.C. art. 1550 provides:
The donation or the acceptance of a donation of an incorporeal movable of the kind that is evidenced by a certifí-cate, document, instrument, or other writing, and that is transferable by endorsement or delivery, may be made by authentic act or by compliance with the requirements otherwise applicable to the transfer of that particular kind of incorporeal movable.
In addition, an incorporeal movable that is investment property, as that term is defined in Chapter 9 of the Louisiana Commercial Laws, may also be donated by.a writing signed by the donor that evidences ^donative intent and directs the transfer of the property to the donee or his account or for his benefit. Completion of the transfer to the donee or his account or for his benefit shall constitute acceptance of the donation.

Jurisprudence

In support of his position, Mr. Himes cited three cases: Vercher v. Roy, 171 La. 524, 131 So. 658 (1930); Northcott v. Liv ingood, 10 So.2d 401 (La.App. 2d Cir.1942); and Bordelon v. Brown, 84 So.2d 867 (La.App. 2d Cir.1956). We find that all these cases are factually distinguishable. Vercher dealt with a certificate of deposit which was never delivered to the daughter who subsequently claimed ownership. Northcott involved a joint bank account in the name of a brother and sister. In Bordelon, there was a bank book for a joint savings account deposit and a contract between an elderly invalid and his housekeeper. All these cases generally held that an attempted donation inter vivos of a credit in a bank, as an incorporeal thing, required an act passed before a notary public and two witnesses, as required by former La. C.C. art. 1536. This article stated that “[a]n act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity.” It was repealed in Acts 2008, No. 204, which enacted La. C.C. art. 1550, a provision partially based on former La. C.C. art. 1536.
In support of her argument, Ms. Speed relied upon Succession of Gorman, supra, as well as the more recent cases of Succession of Miller, 405 So.2d 812 (La.1981), and In re Succession of Gassiott, 2014-1019 (La.App. 3d Cir.2/4/15), 159 So.3d 521, writ denied, 2015-0493 (La.5/15/15), 170 So.3d 968.
In its oral reasons for ruling, the trial court found the Gorman case to be the most factually similar case to the instant situation. Mrs. Gorman, who was hospitalized, executed a power of attorney to her sister, Mrs. Muller, which allowed Mrs. Muller to withdraw money from Mrs, Gor-man’s bank account. In front of a witness, Mrs. Gorman handed jewelry and her bank book to Mrs. Muller and specifically told the witness that she was giving the *583 items to Mrs. Muller in her presence. Mrs. Gorman died a few weeks later. Mrs. Muller withdrew all the money -during her sister’s lifetime, using some to pay Mrs. Gorman’s hospital bills while retaining the rest, all in compliance with Mrs. Gorman’s expressed wishes. The executor of Mrs. Gorman’s estate contested the gifts. In affirming the district court’s decision in the sister’s favor, the supreme court stated:
The parties adopted the most expedient way of making and accepting the donation. It was not ineffective on that account. It would have been an idle cere-, mony for Mrs. Muller after withdrawing the money from the bank to hand it to Mrs. Gorman, the donor, so that Mrs. Gorman in turn might give it to Mrs. Muller, the donee. The law takes no account of useless formalities. In order to complete the manual gift it suffices that the will of the donor to give and the actual possession of the movable property by the donee operate simultaneously. In this case, the desire of Mrs. Gorman to make the gift was in full operation at the moment Mrs. Muller actually received the money from the bank.
In Succession of Miller, supra, Mrs. Meyer, a cousin of the decedent, Ms. Miller, claimed ownership by virtue of inter vivos manual donation of certain bearer bonds and cash listed in the succession inventory. The Louisiana Supreme Court found that there was a valid inter vivos donation |sas to the money in a joint savings account opened by the decedent several months before her death in 'her name and that of Mrs. Meyer. The decedent opened the account with funds she received upon closing a personal savings account in her name only. The new account was designated as “payable to either or survivor.” Mrs. Meyer withdrew the funds from the joint account the day before the decedent died' pursuant to the decedent’s instructions. The court held that the funds from the savings account should be excluded from the succession inventory because, being corporeal movables .that were actually delivered to the donee, a valid inter vivos donation .by manual gift of the funds was made.
In so ruling, the supreme court stated that while the savings account, or the right to the funds therein, is an incorporeal movable not subject to manual gift, the cash withdrawn from the savings account is a corporeal movable and subject to manual gift provided there was actual delivery of the funds. The court cited Gorman favorably, reciting the same language quoted by the trial court in its oral reasons for judgment in the case sub judice. The Miller court observed that it was clear from the prior jurisprudence that there was no need for the donor to actually hand over the cash to the donee and that it was sufficient that the will of the donor to give and the actual possession of the movable property by .the donee operate simultaneously.
In the Gassiott case, which was rendered after the trial court’s ruling, 'the decedent deposited half of the proceeds from a medical malpractice lawsuit into a joint savings account he shared with his second wife, while |3putting the other half into his separate checking account. The decedent deliberately kept the existence of the savings account and the fact that he had settled the lawsuit from his children. Four days: before his death, his wife withdrew the funds' from the joint savings account at his insistence. After his death, his children sought the return of the funds. The trial court found "that the decedent placed the funds in the savings account for the benefit of his' wife and that the estate was not entitled to reimbursement. In so ruling, the trial court found that the decedent made a donation inter vivos of money to his wife, which he placed in a savings *584 account opened for her benefit and containing her name. She accepted that donation and signed bank documents evidencing that acceptance.
The appellate court affirmed. It found no manifest error in the trial court’s credibility determinations and its conclusion that the decedent intended for his wife to have the money in the savings account. The court further held that there was no legal error in the trial court’s finding that a valid donation inter vivos was completed. It applied La. C.C. art. 1550, enacted in 2009, which provides for transfers evidenced by certificates or documents as long as the requirements applicable to that type of transfer have been met. The court found that there was no dispute that the joint savings account was validly created. Consequently, once the decedent negotiated the settlement check and deposited the funds into the joint account, when coupled with his donative intent, the donation was effectively complete.
|10The Gassiott court noted that many of the cases cited by the decedent’s children predated La. C.C. art. 1550. Additionally, it cited Succession of Miller, supra, as an example of the supreme court going to “great lengths to enforce the donative intent of the deceased pertaining to the withdrawal of cash from a joint savings account in the absence of a notarial act,” The court stated that the decedent’s wife could have withdrawn the funds from the joint account at any time, making the cash a corporeal movable. It found that “there are potentially two means by which the donation inter vivos was effectuated: via donation at the time of creation of the joint savings account or via the conversion of the funds to a corporeal movable upon withdrawal thus requiring no formality,”

Discussion

In the instant case, the trial court astutely acknowledged the realities of modern banking:
[A]nd frankly it would be rather ridiculous for Mr. Harrison to go to the bank and say, I wish to give Ms. Speed 90-some-odd-thousand dollars, madam bank manager, I want you to go to your safe and pull out 90-some-odd thousand dollars in cash so you can put it on the table, and I can slide it over to Ms. Speed. That’s not the era we live in. It, in my opinion, would be completely [sic] formality to do that and rather ridiculous to do that, and, frankly, dangerous to do it. And I don’t even know if the bank has that much cash on hand anymore. It’s all done electronically.
The record reveals that Mr. Harrison initiated the transfer of funds to Ms. Speed. He asked her to accompany him to the bank, where he expressed his desire to give money from his accounts to his great niece. This manual gift of cash was completed when the bank complied with his explicit instructions to remove the funds in question from his accounts and ^deposit them into a new savings account which was solely in Ms. Speed’s name. These actions clearly demonstrated Mr. Harrison’s dona-tive intent to irrevocably divest himself of the money and established that there was actual delivery of the cash to Ms. Speed.
We find that the trial court was correct in its ruling upholding Mr. Harrison’s donation to his great niece.
DIVESTITURE OF ALL PROPERTY
Mr. Himes also contends that the donation divested Mr. Harrison of essentially all his property, in violation of La. C.C. art. 1498. In opposition to this argument, Ms. Speed cites the detailed descriptive list filed by Mr. Himes himself in his father’s succession. This list of Mr. Harrison’s property included two automobiles and ownership rights in two pieces of real estate. Additionally, the record indicates *585 that Mr. Harrison received funds from the Veterans Administration. Accordingly, the record demonstrates that the donation did not, in fact, divest Mr. Harrison of all his property. Consequently, we find that the trial court was not manifestly erroneous in dismissing this contention by Mr. Himes.
FORCED HEIRSHIP
Mr. Himes also makes several arguments pertaining to forced heirship articles, specifically that the donation exceeded three-fourths of the donor’s property (La.C.C. art. 1495); was within three years of the decedent’s death (La.C.C. art. 1505); and impinged upon his legitime (La. C.C. arts. 1503 and 1504). However, as correctly held by the trial court, Mr. Himes is not a forced heir. Forced heirs are “descendants of the first degree who, at the 112time of the death of the decedent, are twenty-three years of age or younger or descendants of the first degree of any age who, because of mental incapacity or physical infirmity, are permanently incapable of taking care of their persons or administering their estates at the time of the death of the decedent.” La. C.C. art. 1493. The record contains documents, including Mr. Himes’s birth certificate, which show that he was 69 years old at the time of his father’s death. It also contains no evidence that he has any mental incapacity or physical infirmity to otherwise qualify as a forced heir. Accordingly, we find that the trial court properly dismissed Mr. Himes’s forced heirship arguments.
CONCLUSION
The trial court judgment is affirmed. Costs of this appeal are assessed to Mr. Himes.
AFFIRMED.

. He transferred $9,696.82 from his checking account (which still had at least $3,000 in it after the transfer) and $82,615.82 from his savings account (which was then closed), for a total of $92,312.64.