James E. Brouillette, THE LAW OFFICE OF JAMES BROUILLETTE, 3330 Lake Villa Drive, Suite 202, Metairie, LA 70002 COUNSEL FOR APPELLANT
Alan G. Bouterie, Alan G. Bouterie, Jr., Melanie Licciardi, BOUTERIE LAW FIRM, APLC, 2110 Packenham Drive, Chalmette, LA 70043 COUNSEL FOR APPELLEES
(Court composed of Judge Rosemary Ledet, Judge Paula A. Brown, Judge Tiffany G. Chase )
Judge Tiffany G. Chase *1206 Margaret Dauterive Vairin (hereinafter "Ms. Vairin") appeals the trial court's November 13, 2017 judgment, which declared valid the donations inter vivos by Ethel Lebourgeois Dauterive (hereinafter "Mrs. Dauterive") to her daughter, Susan Dauterive Comeaux (hereinafter "Ms. Comeaux").[1] For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL HISTORY
Mrs. Dauterive had four children: Ms. Vairin, Ms. Comeaux, Raymond J. Dauterive Jr. (hereinafter "Mr. Dauterive Jr.") and Linda Dauterive Ricks (hereinafter "Ms. Ricks"). Beginning in the early 1980's, Ms. Comeaux served as Mrs. Dauterive's sole caregiver. She lived with her, managed her affairs, and, as her mother's health declined, fed, clothed and bathed her. While Mrs. Dauterive remained mentally sound until her death, she largely relied upon Ms. Comeaux to assist with her financial and medical decisions.[2] To facilitate that role, Ms. Comeaux was added as a joint account holder on all Mrs. Dauterive's bank accounts. Mr. Dauterive Jr. testified that Ms. Comeaux routinely wrote checks and electronically transferred funds for Mrs. Dauterive. Admittedly, while Mrs. Dauterive never utilized online banking, she allowed Ms. Comeaux to do so on Mrs. Dauterive's behalf.
Several years prior to Mrs. Dauterive's death, her health declined. Her children hired daytime sitters but were unhappy with the care Mrs. Dauterive received. Shortly after the last sitter was let go, all four children held a meeting on May 26, 2011.[3] Three of the children, Ms. Comeaux, Mr. Dauterive, Jr. and Ms. Ricks, all testified in support of Ms. Comeaux and confirmed that Mrs. Dauterive participated in the meeting. The three children alleged that the meeting was held to discuss Mrs. Dauterive's long-term care, and all parties agreed Ms. Comeaux would retire early to assist their mother full time. Ms. Comeaux was best equipped to watch their mother, as her three siblings had homes and families and were unable to dedicate the time. It was discussed that since Ms. Comeaux's sole retirement income stemmed from social security, early retirement meant a reduction in her benefits. Ms. Comeaux suffered serious financial consequences as a result of leaving her job early; thus, the three siblings asserted that their mother wanted to remedy that loss by donating her remaining bank account funds to Ms. Comeaux. Ms. Comeaux, Mr. Dauterive Jr. and Ms. Ricks testified that all four siblings agreed with Mrs. Dauterive's oral request to donate the funds. Ms. Vairin disagreed with her three siblings' account of the meeting, contending that Mrs. Dauterive was not present and that it was only held to announce Ms. Comeaux's retirement. Ms. Vairin maintained she was completely unaware of the bank account funds.
Following the meeting, Ms. Comeaux, Mr. Dauterive Jr. and Ms. Ricks testified that their mother continually urged Ms. Comeaux to transfer the money from the joint account into Ms. Comeaux's separate bank account. Ms. Vairin disputed this testimony as well. Beginning in July 2013 and ending in early September 2013, Ms. Comeaux electronically transferred funds *1207 from the joint account she held with Mrs. Dauterive into her personal account in six separate transactions.
On September 30, 2013, Mrs. Dauterive passed away at the age of ninety-two, survived by her four children. Shortly thereafter, the heirs executed an Affidavit of Small Succession (hereinafter "Affidavit"), which identified the succession's sole asset as immovable property. Afterward, Ms. Vairin filed a petition to re-open her mother's succession, seeking to recover the bank account funds transferred from July 2013 to September 2013.[4]
On November 13, 2017, the trial court determined that all funds electronically transferred prior to Ms. Dauterive's death were valid donations inter vivos. Ms. Vairin filed a request for written reasons and subsequently appealed the judgment.[5] On March 19, 2018, the trial court issued reasons for judgment (hereinafter "Reasons"), which stated that the electronic transfer of funds constituted donations inter vivos, perfected by manual delivery. This appeal followed.
DISCUSSION
Ms. Vairin lists three assignments of error on appeal, with one assignment of error taking issue with the trial court's consideration of two powers of attorney in support of its finding. However, we find the primary issue to be whether the trial court committed error in declaring Mrs. Dauterive's electronic transfers to Ms. Comeaux's separate bank account constituted valid donations inter vivos, perfected by manual delivery.
Standard of Review
Statutory interpretation is subject to a de novo standard of review. Benjamin v. Zeichner , 2012-1763, p. 5 (La. 4/5/13), 113 So.3d 197, 201. In addition, a trial court's finding regarding donative intent is a factual issue, reviewed under the manifest error standard. Succession of Serio , 597 So.2d 91, 93 (La.App. 4 Cir. 1992).
Donations Inter Vivos
The Louisiana Civil Code outlines the general rules required for valid donations inter vivos, providing that "[a] donation inter vivos is a contract by which a person, called the donor, gratuitously divests himself, at present and irrevocably, of the thing given in favor of another, called the donee, who accepts it." La. C.C. art. 1468. Unless an exception applies, an authentic act is required for a valid donation inter vivos of an incorporeal movable.[6] La. C.C. art. 1541. It has long been recognized that a bank account is considered an incorporeal movable. La. C.C. art. 473. Further, the donation of an incorporeal movable "evidenced by a certificate, document, instrument, or other writing, and that is transferable by endorsement or delivery, may be made by authentic act or by compliance with the requirements otherwise applicable to the transfer of that particular kind of incorporeal movable." La. C.C. art. 1550. In contrast, a donation inter vivos of a corporeal movable may be *1208 completed by manual delivery of the thing to the donee, without observing any other formalities.[7] La C.C. art. 1543. As such, there is no requirement that the donor physically hand over funds to the donee to perfect a manual gift. La. C.C. art. 1544. Cash withdrawn from a bank account is considered a corporeal movable and can be subject to a manual gift. Succession of Miller , 405 So.2d 812, 813 (La. 1981). Regardless of form, the substantive requirements of divestment and donative intent must be established for a valid donation inter vivos. Succession of Woolfolk, 225 La. 1, 71 So.2d 861, 864 (1954).
In the trial court's Reasons, it noted: Ms. Comeaux testified that she transferred the funds at the direction of Mrs. Dauterive; Ms. Comeaux, Mr. Dauterive, Jr. and Ms. Ricks all testified Mrs. Dauterive expressed donative intent regarding the funds; the funds were not included in the Affidavit, but all heirs, including Ms. Vairin, signed the document; and that Ms. Comeaux possessed a valid power of attorney, permitting her to make such donations. On appeal, the question for this Court is whether the electronic withdrawal and transfer of funds from one bank account to another can be subject to a manual gift, thus eliminating the requirement for an authentic act and whether there is sufficient evidence of donative intent, coupled with manual delivery of the thing.
Exception to Authentic Act Requirement
Uncontroverted evidence established there was no authentic act verifying the donations inter vivos. Ms. Vairin finds fault with the trial court's determination that the withdrawals of funds were perfected by manual delivery. As noted above, money withdrawn from a bank account can be the subject of a manual gift requiring no authentic act. The essential question is whether the transfer of electronic funds from one bank account to another, akin to a cash withdrawal, constitutes a manual gift such that it fits under the exception established in La. C.C. art. 1543.
Whether an electronic transfer of funds is a manual gift is a question of law not yet directly addressed by this Court. Therefore, we find illustrative recent decisions from other circuits. In the case sub judice , Ms. Comeaux was directed by Mrs. Dauterive to electronically withdraw funds from their joint account and to transfer the funds into Ms. Comeaux's separate account. The trial court determined that by completing these acts, the bank account funds were manually transferred because the funds were converted to a corporeal movable once the funds were electronically transferred into a separate account. The trial court cited to Succession of Love , 2016-245 (La.App. 3 Cir. 9/28/16), 201 So.3d 1027, in support, which dealt with inter vivos donations, completed by electronic transfers. In Love, the donor directed the donee to pay various debts by electronic transfer, using their joint bank account to fund the payments. Id at 1031. Prior to the donor's death, the donee complied. Id. The trial court noted that "[i]t has long been held that the withdrawal of funds under those circumstances meets the requirements for the manual delivery of a corporeal movable, i.e., the funds, pursuant to former La.Civ.Code art. 1539, now La.Civ.Code art. 1543." Id. Thus, the electronic withdrawal of "funds" qualified as a corporeal movable.
In Succession of Miller , 405 So.2d 812, 813 (La. 1981), the Louisiana Supreme Court recognized that a "savings account *1209 (an incorporeal movable) was not subject to manual gift, but the cash withdrawn from the account (a corporeal movable) could be subject to manual gift." The evidence must demonstrate that the incorporeal movables were converted into corporeal movables, eliminating the authentic act requirement. Mrs. Dauterive directed Ms. Comeaux to withdraw the funds thereby converting them into a corporeal movable at the moment each of the transfers were made. So long as Ms. Comeaux transferred the funds to her separate account, at Mrs. Dauterive's direction prior to Mrs. Dauterive's death, the funds became a corporeal movable upon withdrawal from the joint account.
In the case of In re Succession of Harrison , 50,258, pp. 10-11 (La.App. 2 Cir. 11/18/15), 183 So.3d 579, 584, the donor directed a bank employee to transfer funds from his bank account into a separate bank account solely held by his great niece. The appellate court in Harrison found the transfer was a valid donation inter vivos, perfected by manual delivery. Id. In so finding, the court in Harrison recognized the principle that the court must consider "the realities of modern banking," noting that it would be an absurd conclusion to require the donor to withdraw a large sum of money in order to then donate those same funds into the donee's separate account. Id. Harrison recognized that these types of transactions are now largely done electronically, due to efficiency, safety and practicality. Id. It is of no moment that Ms. Comeaux initiated the transfer, at Mrs. Dauterive's direction, instead of Mrs. Dauterive performing the transfer herself, as "[t]he law takes no account of useless formalities." Succession of Gorman , 209 La. 1092, 26 So.2d 150, 151 (1946). Requiring more of Mrs. Dauterive would amount to a useless formality and ignore modern banking practices. Testimony from Ms. Comeaux and Mr. Dauterive Jr. established that Mrs. Dauterive never executed an authentic act because the family did not think it was necessary. Mrs. Dauterive expected her children to simply follow her wishes, as they had always done. Therefore, we find no error in the trial court's determination that the funds were converted to corporeal movables, thus no authentic act was required. Next, we must determine if the requirements for donation inter vivos perfected by manual delivery were met.
Delivery of Funds
Since no authentic act was required, we must determine whether the evidence demonstrates the funds were delivered. There is no requirement that Mrs. Dauterive physically hand over the funds to perfect a donation inter vivos by manual delivery. La. C.C. art. 1544. It is undisputed that Ms. Comeaux possessed the funds, as she testified she initiated six electronic transfers of funds from July 2013 to September 2013 to her personal account. As noted above in In re Succession of Harrison, "it was sufficient that the will of the donor to give and the actual possession of the movable property by the donee operate simultaneously." 183 So.3d at 583 (internal quotation and citation omitted). Once the funds were placed into Ms. Comeaux's separate account, Mrs. Dauterive had no access to the funds.
The issue of delivery of funds was addressed in Succession of Zacharie, 119 La. 150, 43 So. 988, 990 (1907), which held that once the donated funds were received and deposited into an account not owned by the donor, "[t]he fund was put beyond the control of the donor, and he could not withdraw the same, or any part thereof, without the written consent of the donees." Id. Manual delivery was achieved once it was transferred into the power and possession of the donee. Id. (citation omitted).
*1210 Thus, we do not find that the trial court erred in determining the funds were delivered.
Donative Intent
The final step in determining whether the donations inter vivos were valid is to establish whether Mrs. Dauterive had donative intent. To prove there were valid donations inter vivos perfected by manual delivery, the burden is on the donee to show by strong and convincing proof that the donor possessed donative intent to irrevocably divest themselves of the thing, coupled with delivery of the thing to the donee. Love , 201 So.3d at 1031-32. "[I]n order to determine whether the donor did in fact intend to make the gift ... we must determine what acts have transpired that may constitute delivery to the possessor." Succession of Oulliber v. Oulliber , 204 So.2d 625, 626 (La.App. 4 Cir. 1967). Donative intent is largely a factual issue and the trial court's determination on that issue is given great deference. Love , 201 So.3d at 1030. A trial court's credibility determination regarding witnesses will not be disturbed unless there was manifest error. Id. (citing Hebert v. Rapides Parish Police Jury , 2006-2001 (La. 4/11/07), 974 So.2d 635, 654, on reh'g (Jan. 16, 2008) ).
There is sufficient evidence of donative intent by the testimony regarding the relationship between the parties. Specifically, the loving relationship between Mrs. Dauterive and Ms. Comeaux.[8] Ms. Comeaux assisted Mrs. Dauterive daily with routine care, brought her to medical appointments and managed her bills. Mr. Dauterive Jr. and Ms. Ricks testified that Ms. Comeaux provided excellent care to their mother, which improved both her health and quality of life. Mrs. Dauterive trusted Ms. Comeaux to remain a joint account holder on her bank accounts and handle all her business affairs. Ms. Comeaux introduced evidence demonstrating the manner in which Ms. Comeaux handled her mother's business affairs over the last thirty years. Mrs. Dauterive consistently directed Ms. Comeaux to complete her wishes in the manner deemed most practical. This included Mrs. Dauterive's various donations inter vivos of money to her four children over the years. [T]he parties adopted the most expedient way of making and accepting the donation." Gorman, 26 So.2d at 151. These donations do not fail simply because Mrs. Dauterive directed Ms. Comeaux to utilize modern electronic banking to facilitate these donations.[9]
*1211 For illustration, sometime in August 2010 and August 2011, Mrs. Dauterive indicated she wanted to donate money to all four of her children. To complete Mrs. Dauterive's donations to her three siblings, Ms. Comeaux transferred funds from the joint account to Ms. Comeaux's personal account. She then wrote a check to the receiving party. As to the donation to herself, Ms. Comeaux electronically transferred the money from the joint account into her separate account. As such, it was not unusual for Ms. Comeaux to electronically transfer funds from the joint account to her own account, at Mrs. Dauterive's direction. Mrs. Dauterive's donative intent is evidenced by the fact that she always directed Ms. Comeaux to complete these types of monetary transactions on Mrs. Dauterive's behalf.
Ms. Comeaux, Mr. Dauterive Jr. and Ms. Ricks provided strong and convincing testimonial evidence that Mrs. Dauterive's outward acts were also indicative of her donative intent. The trial court found that Mrs. Dauterive directed Ms. Comeaux to make the transfer of funds. Mr. Dauterive Jr. and Ms. Ricks confirmed they heard this directive during a May 26, 2011 meeting, at which they maintained that all four heirs and Mrs. Dauterive were present. Ms. Vairin disputes her three siblings' account of the meeting but only Ms. Vairin's testimony contradicted that of her three siblings. Ms. Comeaux introduced additional evidence of the May 2011 meeting, submitting into evidence her resignation letter, emailed to her employer the day after the meeting. In that letter, she indicated she was retiring early to care for her mother, as she and her siblings agreed Mrs. Dauterive needed full time assistance. Mr. Dauterive Jr., Ms. Ricks and Mrs. Comeaux all testified that Mrs. Dauerive continued to express her desire that Ms. Comeaux have the funds and urged her to transfer the funds immediately. Mrs. Dauterive undertook other outward acts to assure Ms. Comeaux was cared for once Mrs. Dauterive died, as she often expressed to her children that she wanted Ms. Comeaux to live in her home for as long as she wished. As a result, both Mr. Dauterive Jr. and Ms. Ricks continue to allow Ms. Comeaux to live in the home undisturbed.
The trial court afforded greater weight to the testimony of Ms. Comeaux, Mr. Dauterive Jr. and Ms. Ricks. Their collective testimony conveyed the most accurate representation of both Mrs. Dauterive's relationship with Ms. Comeaux and Mrs. Dauterive's outward acts, all of which evidenced donative intent to complete the donations inter vivos by manual gift. Ms. Comeaux agreed to retire early to care for her mother, which resulted in the loss of her health insurance, an upcoming raise and a decrease in her retirement benefits. The trial court found the testimony of Mr. Dauterive Jr. and Ms. Ricks, both of whom were intimately acquainted with the facts and offered unique insights into the family relationships, was clearly more credible than that of Mrs. Vairin.
Based upon the record before this Court, we do not find the trial court committed manifest error in determining that the factual evidence established Mrs. Dauterive's donative intent.
CONCLUSION
After a review of the record, we find that the trial court did not err in determining *1212 that the electronic transfers were perfected by manual delivery, thus no authentic act was required. Further, there is sufficient evidence in the record to support the trial court's determination that Mrs. Dauterive had donative intent to irrevocably divest herself of the funds at the time of transfer, coupled with delivery to Ms. Comeaux. Accordingly, we affirm the trial court's judgment finding that all funds transferred prior to the death of Mrs. Dauterive constituted valid donations inter vivos perfected by manual delivery.
AFFIRMED

Ms. Vairin's name was misspelled in the original petition as "Maragaret."

Ms. Comeaux testified that because of Mrs. Dauterive's limited sixth grade education, Mrs. Dauterive relied upon Ms. Comeaux for everything after the death of Raymond J. Dauterive Sr.

The children's accounts of that meeting differed.

The parties do not seek review of the trial court's reopening of the succession to address the post-death transfers.

Ms. Vairin filed a request for written reasons on November 20, 2017. On December 4, 2017, before the written reasons were issued, Ms. Vairin also filed her request for a devolutive appeal. On May 21, 2018, the record was supplemented to include the written reasons for judgment, issued on March 19, 2018.

La. C.C. art. 461 provides the definition for incorporeal movables, noting: "[i]ncorporeals are things that have no body, but are comprehended by the understanding, such as the rights of inheritance, servitudes, obligations, and right of intellectual property."

La. C.C. art. 461 illustrates that "[c]orporeals are things that have a body, whether animate or inanimate, and can be felt or touched."

As further evidence of donative intent, this Court notes that there were two powers of attorney executed by Mrs. Dauterive in favor of Ms. Comeaux. While the record contains the exhibits attached to the defendants post-hearing memorandum, the exhibits were never formally offered, filed and introduced into the record below, thus cannot be considered as evidence on appeal. La. C.C.P. art. 2164. See also Crosby v. Sahuque Realty Co. , 2012-1537, 2012-1538, p. 8 (La.App. 4 Cir. 8/21/13), 122 So.3d 1197, 1203. All parties appear to agree there were two valid powers of attorney, as Ms. Vairin only argued they were not properly introduced. While the March 19, 2018 Reasons reflect that the trial court considered the powers of attorney in support of its finding, they were not the sole basis for its ruling. Even if the powers of attorney are not considered, there is ample additional evidence which supports the trial court's findings.

Ms. Vairin argues that the powers of attorney did not expressly authorize Ms. Comeaux to self-deal. Under the laws of mandate, the authority to make an inter vivios donation must be expressly given. La. C.C. art. 2997. However, the authority to self-deal required by La. C.C. art. 2998 can be expressed orally and does not require a writing. Love , 201 So.3d at 1034 (citation omitted). "The contract of mandate is not required to be in any particular form. Nevertheless, when the law prescribes a certain form for an act, a mandate authorizing the act must be in that form." La. C.C. art. 2993. Since we find the electronic transfers are manual gifts under La. C.C. art.1543, no formalities are required. Thus, Mrs. Dauterive's oral instructions to Ms. Comeaux to transfer the money to her own separate account satisfied the requirements of La. C.C. arts. 2997 and 2998. These instructions, corroborated by Mr. Dauterive Jr. and Ms. Ricks, act as an express oral authorization to make an inter vivos donation.